THE STATE *ex rel.* GIBSON, *Collector*, v. LOUNSBERRY *et al.*; LOUNSBERRY *Appellant.*

Division One, November 26, 1894.

1. **Revenue Law**: ASSESSOR'S BOOK: TAXES.    The assessor is not under the revenue law, required to return to the county court a "copy" of his original assessment book, but only his original book duly verified.    (R. S. 1889, secs. 7553, 7571.)

2. ———: ———: COUNTY CLERK.    The fact that the county clerk does not extend the taxes on the assessor's book but extends them on a copy thereof made out by him as the tax book of the collector does not invalidate the taxes.

3. ———: DESCRIPTION OF LAND, OBJECTIONS TO: WAIVER.    An objection, in an action to enforce a tax lien, to the sufficiency of the description of the land in the tax bill must be specifically made or it will not be reviewed on appeal.

*Appeal from Newton Circuit Court.*—HON. M. G. MCGREGOR, Special Judge.

AFFIRMED.

*George Hubbert* for appellant.

(1) The description in assessment and tax bill is not an accurate or intelligible description of the appellant's land, but is altogether too uncertain to sup-

port a tax levy. *State v. Railroad,* 114 Mo. 1; *Lowe v. Ekey,* 82 Mo. 286; *Powers v. Larabee,* 49 N. W. Rep. *Power v. Bowdle,* 54 N. W. Rep. 404. (2) A copy of the original assessor's book should have been made by the assessor and returned to the court. *Clark v. Crane,* 71 Mo. 776; Cooley on Taxation, pp. 284, 285. The greatest strictness prevails in tax proceedings as to essential acts. *Lagroue v. Rains,* 48 Mo. 536; *State ex rel. v. Scott,* 96 Mo. 72. There was no tax charge fixed and extended against the lands upon the returned assessor's book by the county clerk, without which no "tax book" nor "back tax book" could be issued for collection of the tax claim. *State ex rel. v. Phillips,* 102 Mo. 664.

*O. L. Cravens* for respondent.

(1) The failure of the assessor to make and certify a copy of the assessment books to the board of eqalization did not affect the validity of the taxes. The making of copies, if required, is not a jurisdictional fact and the doctrine is that whatever the legislature might have originally dispensed with may, when omitted, be cured by the provisions of the statute. Welty on Assessments, secs. 232, 236. (2) The power to tax creates the corresponding liability to pay. When the proper assessment is made under the revenue laws, then the liability of the property holder becomes complete, and in consideration of this liability the property holder is entitled to the protection which the government affords. *Ass'n v. Wood,* 39 Pa. St. 73; *Youngblood v. Sexton,* 32 Mich. 406. (3) Revised Statutes, 1889, section 7571, does no more than direct that neat, well written and legible assessor's books of the real and personal assessment lists be prepared by him and returned to the county court and does not mean that

he shall make duplicate copies of said lists. (4) If error was committed in permitting the tax bill to be read in evidence it was cured by the introduction by the defendant of the "whole of the records and proceedings relating to the assessment levy, extension and attempted collection of taxes in Newton county, for the year 1890 in question, to impeach the tax bill," etc. R. S. 1889, sec. 2303; *State ex rel. v. Edwards,* 78 Mo. 473; *Blesse v. Blackburn,* 31 Mo. App. 264; *Bassett v. Glover,* 31 Mo. App. 150; *Fell v. Coal Company,* 23 Mo. App. 216; *Mfg. Co. v. Mitchell,* 38 Mo. App. 321; *Straat v. Haywood,* 37 Mo. App. 585; *Moss v. Richie,* 50 Mo. App. 75; *Lannier v. Gehner,* 110 Mo. 122; *Gordon v. Eans,* 97 Mo. 587; *Flynn v. Neosho,* 114 Mo. 567; *Boggess v. Street Railway Co.,* 118 Mo. 238. (5) Appellant did not specifically raise in the lower court the question of the insufficiency of the description of the premises in the tax bill.

BLACK, P. J.—This was a suit by the collector of Newton county to enforce the state's lien, for taxes levied for the year 1890, upon land described in the petition as "the west half of the east fractional half of section 5" etc. Lounsberry and four other persons were made defendants. He filed answer; the other persons made default.

On the trial the plaintiff offered in evidence the tax bill filed with the petition, to which the defendant objected, but the court overruled the objection and the defendant excepted. On this evidence the plaintiff rested his case. The defendant then introduced the whole of the records and proceedings relating to the asssessment, levy and extension of the taxes for 1890. According to the bill of exceptions these records and proceedings show the following facts: That the assessor made out an original assessment book, in which lands

were listed as of the first of June, 1889; that the land assessment book was returned by the assessor to the county court, but he did not, at any time, make out or return a copy thereof; that the county clerk made a copy of the original assessment book, with the taxes extended therein, and delivered the same to the collector as and for the tax book of 1890; and that no taxes have ever been extended for 1890 opposite or against the land described in the petition on the original assessment book or on a copy thereof other than a copy made out by the county clerk for the assessor. The tax proceedings are conceded to have been regular in all other respects.

1. The plaintiff insists that the assessor should have made out and returned to the county court, not the original assessment book, but a copy thereof to be used before the board of equalization and upon which to extend the taxes. In other words, the claim is that there must be three books, namely, the original assessment book, a verified copy thereof to be made out and certified by the assessor to the county court, and then a copy to be made by the county clerk and by him delivered to the collector.

Section 7571, Revised Statutes, 1879, provides that the assessor shall make out and return to the county court "a fair copy of the assessor's book, verified by his affidavit annexed thereto," etc. If it be conceded the assessor should prepare an original assessment book and then make out and return a verified copy thereof, and that the copy should be laid before the board of equalization and the taxes extended thereon, still it does not follow that the plaintiff must fail in this suit. In the recent case of *State ex rel. v. Bank,* 120 Mo. 161, the assessor failed to make out and return a copy of his assessment book of personal property, but returned only the original, and the taxes were extended

on the original assessment book.  It was held the assessor acquired jurisdiction when his assessment book was made out, and the omission to return a copy upon which to extend the taxes was cured by certain sections of the statute.  The same principle must apply to an assessment of real estate.

But after a careful consideration of the statutes we are satisfied the words "a fair copy of the assessor's book, verified" etc., mean the assessor's book and not a copy thereof.  They mean a fair, legible assessment book.  Long ago the assessor was required to make out and return to the county court "a fair copy of the tax book verified," etc.  R. S. 1855, p. 1334, sec. 49.  As the law then stood the assessor was required to make a list of all the taxable property, to be called the "tax book," and sections 50 and 51 show clearly enough that the "fair copy" mentioned in section 49 was the tax book itself and not a copy; for section 50 speaks of the "tax book" as the book mentioned in section 49.  The words "fair copy" seem to have been used in the same sense in all subsequent statutes.  That they are so used in the present statutes will clearly appear by an examination of the various sections of the present revenue law.

By section 7551 of Revised Statutes of 1889, the assessor is required to make out a list of all taxable. property to be called the "assessor's book."  Section 7553 speaks of "assessor's books" and says they shall be divided into two parts, the first to be known as "the land list" and the second as the "personal property list."  By section 7564, it is made the duty of the assessor to value and assess all property on the "assessor's book" according to the true value.  Then comes section 7571 which declares that the assessor shall make out and return to the county court "a fair copy of the

assessor's book;'' but this section goes on to say, ''and the clerk of the county court shall immediately make out an abstract of the assessment book  *  *  * and forward the same to the state auditor, to be laid before the state board of equalization.'' Now the ''assessment book'' here mentioned must be the book placed in the custody of the county court for it is the only one from which the clerk can make the abstract, and yet it is not called a *copy*. Section 7575 provides that in preparing the ''assessor's book,'' the assessor shall provide columns for the valuations as adjusted by the state board of equalization, thus showing that it is the assessment book and not a copy thereof which is to be laid before the county board of equalization. And it is on this book that the taxes should be extended. By section 7576, it is provided that as soon as the ''assessor's book'' shall be corrected and adjusted, the clerk of the county court shall make a copy thereof, with the taxes extended thereon, for the collector, and such copy of the ''assessor's book'' shall be called the ''tax book.''

If we follow the literal meaning of the words ''fair copy,'' then the original assessment book need not be verified and there is no law requiring it to be filed in any office where county records are kept, and it becomes a useless thing and subserves no purpose whatever. Moreover, we find no law allowing the assessor any compensation for making a copy. As far as we can see from cases in this court, it is the universal practice, under this and former laws, for the assessors to verify and return the original assessment book and not a copy of it. From the sections of the statute before mentioned it will be seen the ''fair copy'' mentioned in section 7571 is called the assessment book in the same section, and other sections speak of the book to be laid before the county board of equalization and upon which the taxes due are to be extended, as the

assessment book. There is but one way to make these various sections harmonize, and that is to consider the words "fair copy," as used in section 7571, as meaning a fair, legible assessment book, and this is beyond all doubt the sense in which they are there used.

This conclusion is in entire accord with what was said in *State ex rel. v. Phillips*, 102 Mo. 668. It was there said: "When the assessor's book is completed by the assessor and verified by him in accordance with provisions of said section, it is made his duty to return the same to the county court," etc. The court was then dealing with the original assessment book and not a copy thereof.

It follows from what has been said that the law does not require the assessor to make out and return a copy, but it is his duty to return his assessment book duly verified, and this book and not a copy thereof becomes the foundation for subsequent proceedings, and it is on this book that the taxes should be extended.

2. The county clerk did not extend the taxes on the assessor's book, but extended them on the copy thereof made out by him as the tax book for the collector, and it is claimed the taxes in question can not be collected because of this omission on the part of the county clerk. We do not regard this omission as fatal. As the assessment constitutes the basis and foundation of subsequent proceedings, there should be a fair and substantial compliance with the statute on that subject, but the same strictness ought not to be required in subsequent proceedings, and especially those which are formal. In *Thomas v. Chapin*, 116 Mo. 396, the contention was that the tax book certified to the collector should consist of one and not two books, but this court said: "Requirements that do not affect the rights or interests of the taxpayer but

made simply for the purpose of securing order, system and convenience in the dispatch of the public business are directory in their character—a literal compliance with which is not essential to the validity of the tax." See, also, on this subject, *State ex rel. v. Bank*, 120 Mo. 161. Applying the principle declared in the cases just cited, the omission of the clerk to extend the taxes on the assessor's book is not a fatal one, the taxes having been extended by him on the tax book delivered to the collector. The omission is cured by force of sections 7708 and 7563.

3.    The defendant's further and final objection is that the tax bill should have been excluded because of a defective and insufficient description of the land, the land being described therein as "W² E. fract. ½ sec. 5 T. 24 R. 32." On the other hand, the plaintiff says the supposed defect was cured by the assessment book put in evidence by the defendant. The bill of exceptions was not prepared with a view of disclosing how the land was described on the assessment book, and for this reason, if for no other, we can not say the alleged defect was cured by the defendant's evidence. The further point made by the plaintiff that this question as to the sufficiency of the description was not made in the trial court, and therefore can not be considered here, is, in our opinion, well taken. The defendant objected to the tax bill when offered in evidence because "not sufficent on its face to show tax charge for the items or amounts charged in the petition as against the land described in said petition." The defendant asked, but the court refused, this instruction: "The court declares that under the law, the tax bill read in evidence is not sufficient *prima facie* proof of the plaintiff's case for a tax charge against the land described in the petition." The objection made when the tax bill was offered in evidence and the refused

instructions are too general to raise such an objection as that now made. If the defendant intended to object to the tax bill ·because it did not properly describe the land, he ought to have said so. Such objections can be and ought to be specifically made, so that the trial court may know what it is called upon to decide, and at the same time give the other party an opportunity .to overcome the objection. The judgment is affirmed. All concur. BARCLAY, J., concurs in the result.