THE STATE ex rel. JOHN T. BARKER, Attorney-General, v. JAMES P. SCOTT, Appellant.

Division C ie, February 20, 1917.

1. **MONEY HAD AND RECEIVED: Payment: Judgment on Pleadings.** In a suit by the State against a county clerk to recover back money paid, an allegation charging that he had wrongfully and falsely certified to the State Auditor that he had extended the taxes upon the assessor's book, and by said false certificate had received a definite sum of money from the State for work he had not at the time performed, is covered by a general denial, and a judgment on the pleadings cannot stand, unless the other plea in the answer that the money was voluntarily paid, with full knowledge of the facts, before any of the work had been done, and that the work was afterwards done by him during his same term of office, constitutes no defense.

2. ———: ———: **By Public Officers: Mistake of Law.** Where all the participants were officers each acting solely in his official capacity, the rule that money paid under a mistaken view of the law, with full knowledge of the facts, cannot be recovered, has no application. In such case the officer receiving the money must find his right thereto in the law; and no subsequent approval, acquiescence or settlement, non-judicial in character, can operate to justify an unlawful act.

3. ———: ———: **Before Work is Done: Work Done Before Suit: Purpose of Extension on Assessment Book.** The statute (Sec. 11549, R. S. 1909) which allows compensation to the county clerk for "services rendered" in "extending the taxes on the assessment book" does not designate the time within which the work is to be done, nor fix a penalty for failure to do it before making out and delivering the tax book to the collector, and the act is such that the time of its performance has no effect upon the validity of the tax, and is important only (1) as an aid to the clerk in correctly extending the taxes upon the tax book and (2) as a permanent public record of the amount of the tax in accordance with the final orders of the county and state boards; and in an action by the State to recover back money from the county clerk, paid by the State Auditor before the work of extending the taxes on the assessment book was done, but which was done before the action was instituted, there can be no recovery on the theory either (1) of enforcing a penalty for not doing the work sooner or (2) that the payment having been made the duty to do it ceased and its performance thereafter was a work of supererogation.

Appeal from Clark Circuit Court.—*Hon. N. M. Pettingill,* Judge.

REVERSED AND REMANDED.

*Cooley & Murrell, J. A. Whiteside* and *B. L. Gridley* for appellant.

(1)  The statutory provisions pleaded and relied on by plaintiff make no provision as to when the work for which these fees were paid shall be completed, nor does any other statute; and even if there was a statutory time limit, and the work had not been completed within such time, neither the statute pleaded, not any other, fixes as a penalty for such failure the forfeiture of the fees, nor authorizes the State to recover the fees after they have been paid; especially when, as here, the work was done and completed before suit brought. The burden is on the State to show a clear right of recovery.   (2)  The extension of the taxes for which these fees were paid to the clerk is not necessary to the validity of the assessment nor a prerequisite to the collection thereof.   State ex rel. v. Wilson, 216 Mo. 286; State ex rel. v. Lounsberry, 125 Mo. 163.   (3)  The statute pleaded, Sec. 11397, R. S. 1909, provides that the clerk shall do this work.   Sec. 11549 provides that he shall be paid certain fees for doing it.   Neither section says when he shall do it.   No statute provides that for any delay in doing it he shall forfeit the fees.   If not done until after the "tax book" (the book that goes to the collector) has been made and delivered, it still remains the clerk's duty to extend these taxes on the assessor's book, which remains in his office.   When done, he would unquestionably be entitled to the fees. Therefore, even if the State would have had a right to recover on the theory that the fees had not been earned when they were paid, if suit had been brought before the work had been done, it could have no such right to recover in this case, because when suit was filed, the work was done and the fees earned.   (4)  Money or fees paid through mistake of law cannot be recovered.   The answer pleads, and for the purposes of this case, the motion for judgment admits, that the State paid the money with full knowledge of the facts.   Hence if

there was a mistake, it was one of law. The law allows the clerk certain fees, aggregating a certain amount. Having received and charged himself with these fees it reduced the amount he could keep from other sources. It was a settlement. State ex rel. v. Ewing, 116 Mo. 129; Corbin v. County, 171 Mo. 385; Schell City v. Mfg. Co., 39 Mo. App. 264; State ex rel. v. Hawkins, 169 Mo. 615; State ex rel. v. Shipman, 125 Mo. 436; Scott County v. Leftwitch, 145 Mo. 34. The case of Lamar Twp. v. City of Lamar, 261 Mo. 171, does not fit the case at bar; besides it recognizes that where there has been a settlement, or what amounts to a settlement, with an officer, the municipality is barred from any recovery. See Lamar case, l. c. 190, and cases cited.

*John T. Barker,* Attorney-General, and *Lee B. Ewing,* Assistant Attorney-General, for the State.

(1) The statutes require a county clerk to extend the tax levy for a given year, upon the assessment books, and after the extension has been made thereon to make a copy of said book with taxes extended for the use of the county collector. They require this to be done within ninety days, after the assessments have been equalized by the boards of equalization, and the assessments adjusted by the county clerk. This extension must be made at least before October 1st each year, and if it is not done before that time the clerk is entitled to no fee therefor. Secs. 11397, 11425, 11411, 11414, 11402, 11404, 11549, 11461, R. S. 1909. (2) The fact that suit was not brought to recover back these illegal fees until after the extension of the taxes had been made in August, 1914, does not avail appellant. A public servant may not collect money for the performance of a public service, fail to perform it until such a time as it has become useless, and then escape repayment by performing the useless service after demand for the repayment. (3) The doctrine that money paid under mistake of law cannot be recovered back has no application to public funds paid by one officer to another. To so hold would violate fundamental principles of law

and open wide the door to fraud in the dealing of officials with such funds. Lamar Twp. v. Lamar, 261 Mo. 183; Morrow v. Surber, 97 Mo. 155; Ada County v. Gess, 4 Idaho, 611; Allegheny County v. Grier, 179 Pa. St. 639; Heath v. Allbrook, 123 Iowa, 559; Ellis v. State Auditors, 107 Mich. 528; State v. Young, 134 Iowa, 505; Board of Commissioners v. Heuston, 144 Ind. 588; Reppy v. Jefferson County, 47 Mo. 66; Sears v. Stone County, 105 Mo. 236.

BROWN, C.—The petition, filed September 19, 1914, is in three counts, the first of which, omitting caption, is as follows:

"Comes now the plaintiff in the above entitled cause and states that on the——day of January, 1911, defendant was the duly appointed and commissioned clerk of the county court of Clark County, Missouri, and as such entered upon the discharge of his duties on the——day of January, 1911.

"Plaintiff states that in the year 1910 the county assessor of said Clark County duly assessed the real and personal property of said county, under and by virtue of article 2, chapter 17, Revised Statutes of Missouri 1909, and duly entered said assessment in the assessment book in said county and duly returned said assessment book to the county court of said county; and that the same was received and accepted by said court, and afterwards at the time provided by law, the State Board of Equalization of the State of Missouri and the County Board of Equalization of said Clark County duly passed upon and equalized said assessment. That afterwards, and at the time provided by law, there was duly levied upon said assessment, equalized as aforesaid, the state, county and municipal taxes of said Clark County, under and by virtue of article 5 of chapter 117, Revised Statutes 1909.

"Plaintiff further states that as such clerk and under and by virtue of section 11397, Revised Statutes 1909, it became and was the duty of the defendant to extend the taxes so levied as aforesaid upon said assess-

ment book; that under and by virtue of section 11549, Revised Statutes 1909, said defendant was entitled to receive as full compensation for extending the taxes upon said assessment book, the sum of three cents for each name appearing thereon, the same to be paid by the said Clark County and State of Missouri in proportion to the number of tax columns used by each in said assessment book.

"Plaintiff further states that on the —— day of—— 191—, the defendant herein knowingly, wrongfully and falsely certified to the State Auditor of the State of Missouri that he had extended the taxes so levied as aforesaid upon said assessment book, and that he was entitled to receive therefor the sum of eighty-one dollars and fifty cents from the State of Missouri, as compensation for the proportionate part of said work of extending said assessment on behalf of the State of Missouri; that in reliance upon said certificate, and believing the same to be true, the State Auditor of the State of Missouri caused to be issued a warrant upon the State Treasurer of the State of Missouri for the sum of eighty-one dollars and fifty cents in favor of the defendant and delivered the same to him in payment of his alleged services in extending the taxes as aforesaid upon said assessment book, and that said warrant was duly paid by the State Treasurer, and that defendant received the money thereon.

"Plaintiff further alleges and charges that defendant did not extend the taxes so levied as aforesaid upon the assessment book aforesaid and so certified by defendant as aforesaid, and that by reason thereof defendant was not entitled to receive any compensation from the State of Missouri for any alleged service in extending said taxes.

"Plaintiff further states that although often demanded of defendant by plaintiff, said defendant has wholly failed and refused to return to said plaintiff the said sum of eighty-one dollars and fifty cents, paid him as aforesaid.

"Wherefore, plaintiff prays judgment against defendant for the sum of eighty-one dollars and fifty cents, with interest from —— day of ——, 1911."

The second and third counts declare for similar fees collected upon the as. .....ts for the two following years respectively. The answer is, omitting caption and signatures, as follows:

"Defendant for answer to plaintiff's petition and each count thereof admits that he was during the times mentioned in each count of plaintiff's petition the duly elected and acting Clerk of the County Court of Clark County, Missouri. He admits that in the years mentioned in the petition the county assessor of said county assessed the real and personal property of said county and entered said assessment in the assessment books and returned said assessment books to the county court of said county, which were received and accepted by said court.

"Admits that the State Board of Equalization and the County Board of Equalization passed upon and equalized said assessments. That there were thereafter levied upon said assessments the state, county and municipal taxes of said Clark County.

"Admits that as such county clerk it became defendant's duty to extend the taxes so levied upon said assessment books, and that defendant under the statutes of the State of Missouri, was entitled to receive as compensation for so extending said taxes the sum of three cents for each name appearing thereon, to be paid by said Clark County and by the State of Missouri in proportion to the number of tax columns used by each in said assessment books.

"Defendant further answering says that the said moneys alleged in plaintiff's petition and each count thereof as having been paid by the State of Missouri for extending said taxes was paid by the State, and was the amount the State of Missouri should pay as provided by statute; that defendant received said money as part of his compensation as county clerk aforesaid.

"And defendant further says that during his said term of office, and before the filing of this suit, and to-wit, during the year 1914 and on and prior to the —— day of August, 1914, he fully performed and completed the said work of extending said taxes for all of said years on said assessment books as was his duty to do as said clerk, as charged in plaintiff's petition, and that plaintiff is not entitled to recover said moneys or any part thereof.

"And defendant denies all other allegations in plaintiff's petition and each count thereof contained.

"And defendant further answering says that said moneys so paid by the State of Missouri were paid by it with full knowledge on the part of the State, through its agents, of all the facts and that plaintiff is not entitled to recover same and having fully answered defendant asks to be discharged with his costs."

To this a motion for judgment was filed, the body of which is as follows:

"Comes now plaintiff in this cause and moves the court to render judgment in favor of the plaintiff upon the mentioned facts and upon all the facts disclosed by the pleadings herein, for the reason that it fully appears from the face of the petition and answer in this cause that plaintiff is entitled to judgment upon each count of the petition for the amount in each count prayed.

"Wherefore plaintiff prays the judgment of this court."

The motion was sustained, to which exception was duly taken and judgment entered for the several amounts demanded, from which this appeal is taken. The only question is whether the plaintiff was entitled to his judgment on the pleadings.

I. The allegation of the petition that the defendant, to procure the payment of these fees, certified that the work had been done, is fully covered by the general denial in the answer. The case therefore stands upon the sufficiency of the plea that the money asked for in each of the three counts of the petition was

**Payment.**

voluntarily paid by the proper officers of the State, with full knowledge of the facts, before any of the work had been done, and that the work was afterward done by defendant during his same term of office, and before the institution of this suit. The question is whether, having been so paid, the money can now be recovered back by the State.

II. It is suggested by defendant that if the money was honestly paid, and received with a full knowledge on the part of the officers of the State of all the circumstances, it was paid under mistake of law, and cannot, therefore, be recovered back. We do not think **Payment: Mistake of Law.** this rule is applicable to this transaction. All the participants were officers, each acting solely in his official capacity. When one assumes to represent the State in the disposition of the people's money, he and those dealing with him must look to the law for his authority; and no subsequent act of approval, acquiescence or settlement non-judicial in character, can operate to extend that authority over an unlawful act. This question was lately considered by Division Number Two of this court in Lamar Township v. City of Lamar, 261 Mo. 171, in which the same conclusion was reached, and many authorities cited in its support. It remains for us to examine this case in the light of that doctrine as well as of other principles arising out of its peculiar facts.

III. That this action would lie to recover back the amount paid the defendant for extending the tax on the assessment book had the work not been done, we have no doubt; for section 11549, Revised Statutes 1909, under which it is claimed, allows the compensation for "services rendered" in "extending the tax on the assessment book," and these services are not rendered until the work is done. We will not, however, consider questions which might have arisen had the suit been instituted immediately upon the wrongful receipt of the money by the clerk, for they are not presented. When the suit was begun

the money had been paid, and the work done, so that the recovery sought is either the enforcement of a penalty against the clerk for not having done it sooner, or an assertion by the State that the duty to do it had ceased so that its accomplishment was a work of supererogation on his part. The first of these theories is untenable because a penalty can only be imposed by the Legislature, and we are cited to no statute, and have been able to find none, imposing it. The other theory is the one on which the Attorney-General evidently stands. In considering the question from that standpoint it occurs to us that there must have been not only a time when the duty of the clerk to extend these taxes upon the assessment book was fixed, but also a time when the duty ceased, and his failure became a delinquency; for it is evident that so long as the duty existed he might with propriety discharge it.

This court held, so long ago that any dissatisfaction with its ruling should have found expression in the statutes, that the omission of the clerk to extend the tax upon the assessor's books, as in this case, did not invalidate the tax or preclude its collection. [State ex rel. v. Lounsberry, 125 Mo. 157, l. c. 163.] As said in that case, the assessment constitutes the basis and foundation of the subsequent tax proceeding, and it might well have been added, had it been pertinent, that the tax book which it is made the duty of the clerk to prepare and deliver to the collector is the process provided by law for its collection. For this reason, no doubt, a penalty of twenty per cent of the amount of his fees for making it out is imposed by section 11425 upon the county clerk for failure to deliver it to the collector *within ninety days after the assessor's book shall be "corrected and adjusted."* The meaning of the three words we have quoted is interesting in connection with this question. Going back to section 11392, and taking up the history of the book to which they refer, we find that the assessor is required to return it to the county court properly verified on or before January 20th, subject to a penalty of twenty per cent of the amount of his fees for making

it, if he fails to return it on or before that date.   The county clerk is then allowed one month to prepare from it his abstract for the State Board of Equalization, which he must return on or before February 20th or forfeit fifty per cent of the fees allowed him by law for preparing it.   When the County Board of Equalization and Appeals and the State Board of Equalization have respectively acted with reference to the values it contains, the labor of the clerk upon the book again begins.   He must then so correct the book that the valuation of each item of property assessed shall appear upon it in two separate additional columns as corrected by each of those bodies.   It is then and only then that the assessment book is ready for the computation and extension upon its pages of the amounts of each of the several taxes levied against the property of the county.   It is then also that the book is ready to be copied in the tax book and the taxes extended thereon for the collector as provided by section 11425 to which we have already referred.   He then has only ninety days for the performance of this work until the penalty of twenty per cent accrues for delay, while no penalty is imposed upon him for failure to extend the taxes upon the assessment books, with the multitude of computations it involves. It is not surprising that, confronted by this condition, he should examine closely section 11425 to determine whether it directs him as to priority in computing and extending the taxes on these two books.   That part of the section which interests him is as follows:  "As soon as the assessor's book shall be corrected and adjusted, the clerk of the county court,  .  .  .   shall within ninety days thereafter, make a fair copy thereof, with the taxes extended therein, authenticated by the seal of the court, for the use of the collector."   There is nothing in either of the words "corrected" or "adjusted" that implies even remotely the extension of a tax on the book. The assessment has been corrected by each of the boards of equalization, and is to be adjusted by bringing the adjusted valuations into proper relations with each other, so that the combined result, as to each item of taxable

property entered upon its pages, shall appear, expressed in its appropriate columns. It is then that the clerk is required to make a fair copy thereof with the taxes extended therein. There is nothing in this expression which indicates that the word "therein" refers to the original book rather than to the copy.

The assessor's book constitutes a permanent record to be kept in the office of the county clerk from the time of its return by the county assessor with his own valuation written in a single column. As such record, it grows under the hand of the clerk in the performance of his duties. First, the work of the county board of equalization is entered upon its pages; it is then adjusted to the work of the State Board of Equalization; and then the taxes upon each item of property is entered upon it. The Legislature, had it considered it important, could have stated in unmistakable terms that it should be prepared and the taxes extended thereon before they should be extended upon the tax book for the use of the collector. While it imposes other penalties for delay, it imposes no penalty of any kind with respect to delay in this particular work, but leaves it to his own sense of duty and desire to earn and receive the fees. Had it specified the time when the work should be completed, that feature would have been merely directory, unless the nature of the act or the phraseology of the statute had been such that the designation of time must be considered as a limitation of power. · [Lewis-Sutherland Statutory Construction (2 Ed.), sec. 612, p. 1117.] In this case the nature of the act was such that the time of its performance or its performance at all had no effect upon the validity of the ultimate thing to be accomplished, and was only important as an aid to the clerk in correctly extending the taxes upon the tax book, and as a permanent record of the process by which this was done.

As we have already shown the Legislature has been liberal in the imposition of penalties to secure the prompt performance of those acts which constitute a part of the assessment, levy and process for the collection of

taxes where time was considered important, and has added (Sec. 11544) to the list of these a fine of not less than $10 nor more than $1000 against any officer who shall knowingly violate any of the provisions of the chapter we are considering, and also a fine of not less than $10 nor more than $500 for refusal or neglect to perform any of the duties required of him by said chapter upon being required so to do by any person interested in the matter. Should it think it important to specify either the time or order in which the taxes shall be extended upon the assessor's book, or to impose specific penalties for lack of diligence in that respect, we are sure the performance of such duty will not be neglected.

Under the present state of the law the judgment upon the pleadings in their present condition must be reversed and the cause remanded. *Railey, C.,* concurs.

PER CURIAM:—The foregoing opinion of BROWN, C., is adopted as the opinion of the court. All the judges concur.