STATE of Missouri, Appellant,

v.

Lawrence LUDWIG, Respondent.

No. 45746.

Supreme Court of Missouri,

En Banc.

March 9, 1959.

Rehearing Denied April 13, 1959.

John M. Dalton, Atty. Gen., Robert R. Welborn, Asst. Atty. Gen., for appellant. ·

Christian F. Stipp, Carrollton, for respondent.

BARRETT, Commissioner.

In this summary proceeding by motion, alleging that Lawrence Ludwig, who as treasurer and thereby ex-officio collector of Carroll County, had retained fees and commissions in excess of those allowed by law, the State of Missouri sought to recover its share of the excess, $653.96 for 1954 and $844.13 for the year 1955, together with the statutory penalty of 10% per month·upon the amounts he had failed to pay. Sec. 139.260, R.S.Mo.1949, V.A.M.S. Mr. Ludwig filed a motion to dismiss the proceeding and upon the motion's being overruled filed an answer. At the conclusion of a hearing in which Mr. Ludwig offered no evidence except three exhibits, his annual settlements with Carroll County and a letter from the supervisor of the county department of the Department of Revenue, the trial court· found "the issues" on both counts of the motion in favor of the collector and the State of Missouri has appealed from the judgment entered against it.

The statutes governing the salary, fees and commissions of county collectors, particularly those statutes limiting the total salary, fees and commissions of county treasurers who are ex-officio collectors in counties under township organization, are sections 54.320, 52.260, 52.270 and 52.280, R.S.Mo.1949, V.A.M.S. The ex-officio collector here admits that he has retained the fees and commissions described in the proceeding and he tacitly concedes, for the purposes of this proceeding and of this appeal, that they are in excess of the sums allowed by the statutes. Thus there is no controversy as to the basic, underlying facts and the determinative questions briefed and argued concern the validity and applicability of the statutes, the appropriateness of this summary proceeding, and whether the events subsequent to the collection and retention of the commissions constitute a defense to the state's claim. In this opinion it is proposed to first outline and then consider in detailed order the collector's attack upon the statutes and this proceeding. The collector's attack upon the entire proceeding is two-pronged: he first attacks the constitutionality and validity of the statutes, sections 52.260 and 52.270, which limit his fees and commissions, and, second, he attacks the essential merits of the proceeding in detail. ·

He contends that the statutes are unconstitutional for three reasons: one, because the bill by which they were enacted was uncertain and indefinite and contained more than one subject (Const.Mo.1875, Art. 4; Sec. 28; Const.Mo.1945, Art. 3, Sec. 23, V.A.M.S.), second, because the General Assembly in its passage so amended the bill as to change its original purpose ·(Const.Mo.1875, Art. 4, Sec. 25; Const.Mo. 1945, Art. 3, Sec. 21), and, third, because the statutes, particularly section 52.270, deprive him of his property without due process of law (Const.Mo.1875, Art. 2, Sec. 30; Const.Mo.1945, Art. 1, ·Sec. 10). He also urges, in so far as it applies to him as an ex-officio·collector in a township organization county, that the statute limiting his fees and commissions, section 52.-270, was repealed by implication by the reenactment of section 54.320, in 1951, concerning treasurers and ex-officio collectors. ·

The collector's attack upon the essential merits of the proceeding is also threefold: He contends, first, that the state's motion fails to state a claim upon which relief can be granted in that it does not allege

that he has failed to pay "taxes or revenue" collected by him for the state but seeks only to recover "commissions" in excess of those allowed by law. In this connection it is urged that there is no charge or claim of fraud, or of filing a false return, and no allegation or proof that he has intentionally failed to pay the amounts shown to be due on his settlements. Further, in connection with this point, it is said that the evidence proved as a matter of law that the state was not entitled to a recovery against him under section 139.260 (the section under which the proceeding was instituted) because the evidence showed that he had collected and paid the state all taxes due for the two years involved, and there was no order by the county court to pay over to the state any alleged excess commissions. He contends, second, that he made and the county court approved, all as provided by law, his final settlements and, therefore, the state may not recover its share of the excess commissions in this proceeding. He urges, in the third place, that the state accepted his monthly settlements and "his final settlement," and, therefore, the state is "barred" and "estopped," that if there was a mistake in his settlements with the state, the mistake was one of law, not of fact, and precluded a recovery in this proceeding. Since the granting of a rehearing the respondent urges that the action under section 139.260 is solely for the recovery of a penalty, that the penalty of ten per cent per month may not be imposed in the circumstances of this case, that the penalty provision of the statute is not separable from its other provisions, and, therefore, there can be no recovery of the excess commissions or of any other sum in this particular proceeding.

In considering whether the statutes limiting the collector's compensation are unconstitutional by reason of the bill enacting them, it is necessary to note in detail the place of these provisions in the statutes in general. Sections 52.260 and 52.270 are now a part of chapter 52 of the revised statutes and that chapter contains the "general provisions" concerning "County Collectors." Subdivision 13 of section 52.260, dealing with counties in which the total of all taxes levied exceeds $350,000 but is less than $2,000,000, applies to Carroll County and limits the collector's commissions on taxes collected. Section 52.270 makes it the duty of county clerks to forward the annual settlements of collectors to the state auditor and again limits the fees of collectors to specified commissions and as to collectors falling within subsection 13 of section 52.260 to "not more than five thousand five hundred dollars." In express language, section 52.270 does not apply to the rate of per cent to be charged for collecting taxes in counties under township organization, such as Carroll County, *"but shall apply to counties under township organization so far as to limit the total amount of fees and commissions which may be retained annually by the county treasurer and ex officio collector for collecting taxes in such counties."* In the 1929 statutes what have now come to be sections 52.260 and 52.270 was contained in a single section consisting of fifteen subdivisions, section 9935, and, it may be noted in passing, provided that "no collector shall be allowed to retain over nine thousand dollars of commissions and fees in any one year." This statute, section 9935, referred to but expressly exempted collectors and counties under township organization; "Provided, however, that this section shall not apply to any county adopting township organization." Section 9935 was contained in Article 8, "Collectors And The Collection of Taxes," and the article was a part of Chapter 59, "Taxation and Revenue." In the 1929 statutes chapter 86 dealt with the subject of "Township Organization," and article 11 of that chapter dealt with "County Treasurers As Ex Officio Collectors," section 12316 of the article fixing the salaries and commissions of such officers. It is said in passing, therefore, that there was no necessity for anyone interested in the office of ex-officio collector in a township organization county to familiarize

himself with section 9935, although he had to have known that it was that particular section that specifically exempted township organization counties from the restrictions as to the fees and commissions any collector could retain.

In any event, in 1933 section 9935—now sections 52.260 and 52.270—was "repealed" and "a new section" enacted (Laws of Mo. 1933, p. 454), and it is that act which the respondent now says is unconstitutional; first, in that the bill by which it was enacted infringed and violated section 28, Article 4, Constitution of Missouri 1875 (Const.Mo.1945, Art. 3, Sec. 23): "No bill shall contain more than one subject, which shall be clearly expressed in its title." It is said that the subject of section 9935 was "compensation and limitation of compensation of collectors other than those in township organization counties" while section 12316 governed the compensation of ex-officio collectors in township organization counties, and thus it said and sought to be demonstrated that the act, particularly as amended in its passage, contained two subjects.

The bill by which section 9935 was repealed and the new section enacted was introduced by Senator Albert Clark, then senator from the eighth senatorial district comprised of Caldwell, *Carroll*, Daviess and Ray counties. Section 11269, R.S.Mo.1929. The bill was Senate Bill No. 185 and the Senate Journal recites that it was "An act to repeal section 9935 of article 8, chapter 59, Revised Statutes of Missouri, 1929, entitled 'Collectors and the collection of taxes,' and to enact a new section to be known as section 9935 pertaining to the same subject." Senate Journal, 57th General Assembly, pp. 199–200. After its second reading the bill was referred to the Committee on Ways and Means and that committee recommended the passage of the bill "with Committee amendments 1 and 2." Senate Journal, pp. 259, 447. The bill was then placed on the informal calendar (Senate Journal, p. 487); subsequently Senator

Clark called the bill from the informal calendar and committee amendments 1 and 2 were taken up and read. These amendments changed or amended the "proviso" in section 9935 which had exempted collectors in counties under township organization from the limitations as to commissions they might retain. In section 9935 the proviso had read, "Provided, however, that this section shall not apply to any county adopting township organization * * *." Following the word "organization" the proviso was amended to read, "So far as concerns the rate of per cent to be charged for collecting taxes, *but shall apply to counties under township organization so far as to limit the total amount of fees and commissions which may be retained annually by the county treasurer and ex-officio collector for collecting taxes in such counties.*" Senate Journal, pp. 510–511. Thereafter the Committee on Bills Perfected reported its examination of the bill with the title as it appears in Laws of Missouri 1933, page 454, and by which it was read the third time, passed by the Senate, referred to the House of Representatives where it was passed, read again in the Senate, signed by the President of the Senate and, finally, approved by the Governor. Senate Journal, pp. 560, 680, 1047, 1282, 1414.

In 1929 section 9935 was in article 8, which, as we have said, dealt with the general subject of "Taxation And Revenue" (Vol. II, R.S.Mo.1929, p. 2671); specifically it was in article 8 of that chapter dealing with the subject of "Collectors And The Collection of Taxes." Vol. II, R.S.Mo. 1929, p. 2711. Sections 52.260 and 52.270 now appear in the statutes under "Title VI," under the general subject of "County and Township Government." R.S.Mo.1949, p. 264. Chapter 52 in Title VI concerns "County Collectors" and chapter 54 in that title, including what was once section 12316 in R.S.Mo.1929, concerns "County Treasurers—Treasurer, Ex Officio Collector in Township Organization Counties." Chapter 54, R.S.Mo.1949, V.A.M.S.; Laws Mo. 1951, p. 377.

This may be an unnecessarily long and laborious method of demonstrating the fact, but senate bill 185, as introduced and as amended, had but one object and dealt with but one general subject, fairly indicated by its title, "Collectors And The Collection of Taxes." 1 Cooley, Constitutional Limitations, p. 296. In its details it classified counties and collectors and limited the salaries and commissions of county collectors, including treasurers who were ex-officio collectors in counties under township organization. But the subject of such collectors and their commissions for the collection of taxes is naturally and legitimately related and germane to the one subject of "Collectors And The Collection of Taxes," and so does not infringe the constitutional prohibition against a bill's containing more than one subject. Graves v. Purcell, 337 Mo. 574, 582–583, 85 S.W.2d 543, 548; State ex rel. Transport Mfg. & Equipment Co. v. Bates, 359 Mo. 1002, 1007, 224 S.W.2d 996, 999; Brown v. State, 323 Mo. 138, 19 S.W.2d 12. Compare: State ex rel. Town of Kirkwood v. Heege, 135 Mo. 112, 36 S.W. 614. One of the purposes of the constitutional requirement that a bill shall contain but one subject, clearly expressed in its title, is to prevent surprise or fraud upon members of the legislature and to fairly apprise the public of the subject matter of pending legislation. State ex rel. Town of Kirkwood v. Heege, 135 Mo. 112, 36 S.W. 614. tional Limitations, p. 296. It is not believed that any members of the General Assembly, particularly Judge Clark, or his senatorial constituents in Carroll County, including the ex-officio collector, were surprised or deceived as to the subject matter and contents of this bill either before or after its amendment.

The general subject of the bill was "Collectors And The Collection of Taxes," and it may be that as originally introduced it had the effect of only limiting the compensation of collectors "other than those in township organization" and, as the respondent urges, not "the compensation of *all*

collectors." But it is certainly not surprising or unreasonable that it was made to apply to and equally limit the compensation of all collectors, including those in township organization counties. Section 52.270, as it now stands, requires that all fees and commissions in excess of those specified shall be paid "into the city, county and state treasuries in proportion to the amount received on taxes collected for each." County collectors in counties not under township organization pay the taxes collected by them, as respondent points out, into "state, county and city treasuries" while, he says, ex-officio collectors in township organization counties "deposit" tax money in "state, county, city and township treasuries," and, therefore, it is said that the provision as to proportionate payment of excess commissions "makes no sense" and cannot be intelligently applied in township organization counties. Diemer v. Weiss, 343 Mo. 626, 122 S.W.2d 922. The respondent urges that inapplicability and senselessness are demonstrated by the fact that he retained "commissions of $366.-30 on state taxes collected and plaintiff claims its share of excess commissions is $653.96." If these figures are correct they may show that there has been an error in calculating the precise sum due but they do not demonstrate, necessarily, that the statute is not workable in township organization counties or that the state is not entitled to recover any sum in this proceeding, only the state's proportionate share of excess commissions is involved here. In the trial of the case the dispute was not as to the correctness of the amount of the commissions; the dispute was whether he was entitled to a commission of 3% on sums due the state under section 54.320, R.S.Mo.1949, V.A.M.S., as he claimed, or whether he was limited to the commissions provided in sections 52.260–52.280, as the state claimed.

What has been said with respect to the respondent's claim that the act was unconstitutional in that the bill by which it was enacted contained more than one

subject may be sufficient to dispose of his second claim that the act is unconstitutional in that in its passage the bill was so amended as to change its original purpose; "no bill shall be so amended in its passage through either house, as to change its original purpose." Const.Mo.1875, Art. 4, Sec. 25; Const.Mo.1945, Art. 3, Sec. 21. This constitutional limitation, as with the limitation to one subject, is designed to prevent "'the enactment of amendatory statutes in terms so blind that legislators themselves were sometimes deceived in regard to their effects, and the public, from difficulty in making the necessary examination and comparison, failed to become apprised of the changes made in the laws.'" 1 Cooley, Constitutional Limitations, p. 314. "Purpose" is the key word in the provision and "means the general purpose of the bill, not the mere details through which and by which that purpose is manifested and effectuated." State ex rel. McCaffery v. Mason, 155 Mo. 486, 502–503, 55 S.W. 636, 640. Again, the restriction is against the introduction of matter "not germane to the object of legislation or unrelated to its original subject," alterations which bring about an extension or limitation of the scope of a bill are not prohibited, even new matter is not excluded, if germane. Annotation 15 A.L.R. 421, 422, 426. As previously indicated, the amendments here were germane to the subject and object of the proposed legislation, "Collectors And The Collection of Taxes," and did not so change the original purpose of the bill as to render the act unconstitutional. Compare: Allied Mutual Ins. Co. v. Bell, 353 Mo. 891, 185 S.W.2d 4, 158 A.L.R. 415.

■■ The respondent concedes that he "has no authority which he can cite," nevertheless, he contends that limiting his commissions under section 52.270, instead of allowing them under section 54.320, deprives him of his property without due process of law. Const.Mo.1875, Art. 2, Sec. 30; Const.Mo.1945, Art. 1, Sec. 10. But, of course, no one has a private or vested right in a public office (42 Am.Jur., Sec. 9, p. 886) and while a public official may not be deprived of the emoluments of his office, in the absence of a constitutional restriction against changing his compensation (43 Am.Jur., Secs. 348, 349, pp. 140–141), he is not "denied due process by a statute limiting, or reducing, or otherwise affecting his compensation * * *." 16A C.J.S. Constitutional Law § 600, p. 708 and the cases there cited.

■ The respondent urges, if the statute limiting his compensation (Sec. 52.270) is not unconstitutional, that it was repealed by implication, in so far as it is applicable to ex-officio collectors in township organization counties, by the re-enactment of section 54.320 in 1951, Laws Mo.1951, p. 378. The history of this statute, section 54.320, its several amendments, repeals and re-enactments, has been carefully considered, but it is not necessary to further lengthen this opinion by detailing the various acts of the legislature and point out the various specific changes. As previously stated, its predecessor statute was section 12316 in the 1929 statutes and section 13993 in the 1939 statutes. The substance of this particular statute has always been that it fixed the salary and *rate* of commissions of collectors in township organization counties, sometimes at one rate and sometimes at another. But section 54.320 has never purported to limit the amount of commissions an ex-officio collector might retain; it has only dealt with the rates to be charged. It too was amended in 1933 by reducing the collector's commissions on delinquent taxes from 5% to 2%. Laws Mo. 1933, p. 468. What is now section 52.270, which *limited* the commissions of collectors and exempted collectors under township organization (Sec. 9935, R.S.Mo.1929), was also amended in 1933, and, we repeat, as to collectors in township organization counties it specifically did not apply "so far as concerns the *rate* of per cent. to be charged for collecting taxes," but it was specifically made to apply to such counties and collectors "so far as to limit the total amount of fees and commissions which may

be *retained* annually by the county treasurer and ex-officio collector for collecting taxes in such counties * * *." Laws Mo. 1933, p. 454.

■ On the point of repeal by implication the respondent cites no authority, he only points to the two statutes and says that the legislature in amending and re-enacting section 54.320 in 1949 and in 1951 must have had knowledge of section 52.270 and its limitation and thereby have intended that collectors in township organization counties should receive and retain the increased commissions. But the test of repeal of statutes by implication is repugnancy: "Repeals by implication are not favored—in order for a latter statute to operate as a repeal by implication of an earlier one, there must be such manifest and total repugnance that the two cannot stand; where two acts are seemingly repugnant, they must, if possible, be so construed that the latter may not operate as a repeal of the earlier one by implication; if they are not irreconcilably inconsistent, both must stand." State ex rel. and to Use of Geo. B. Peck Co. v. Brown, 340 Mo. 1189, 1193, 105 S.W.2d 909, 911. One of these statutes dealing with the *rate* of commissions and the other *limiting* the amount of commissions an ex-officio collector may retain are obviously not repugnant or so in conflict that both may not operate. As previously indicated, the statutes concern the same general subject, they are related, they modify one another but may and, if possible, should be construed together (State ex rel. Buchanan County v. Fulks, 296 Mo. 614, 247 S.W. 129), one prescribing the rate and the other limiting the commissions to be retained by an ex-officio collector. The statutes, therefore, are not in irreconcilable conflict so that the re-enactment of section 54.320 in 1951 may be said to have impliedly repealed section 52.270. Compare: State ex rel. Preisler v. Toberman, 364 Mo. 904, 269 S.W.2d 753.

What has been said with respect to the constitutionality and general validity of section 52.270 disposes in some measure of the respondent's attack upon the essential merits of the state's claim; the statute being valid and the respondent tacitly conceding that he has computed and retained commissions in excess of those allowed by the statute, he, of course is indebted to and owes the state some sum. He contends, however, particularly upon rehearing, that the excess commissions are not recoverable in this summary proceeding under section 139.260, R.S.Mo.1949, V.A.M.S., because that statute, in addition to providing a summary remedy against collectors, also provides for a penalty of 10% a month upon the sums due. He urges, therefore, "being solely for the recovery of a penalty" the statute has no application to this case. He concedes, "possibly," that a suit "in conventional form" might have been maintained under section 139.250 without the imposition of a penalty, but, he insists that in this summary proceeding under section 139.260 no penalty was or should be imposed and therefore "neither penalty statute is applicable."

The basis of this contention is his interpretation of State ex rel. and to Use of Thompson v. Sanderson, 336 Mo. 114, 77 S.W.2d 94, which he says holds that because a penalty is not recoverable in the circumstances this summary proceeding may not be invoked for any purpose, particularly for the recovery of the excess commissions. But the respondent has not carefully noted the facts involved upon that appeal and he has overlooked the single point precisely involved in the decision of that case. There the state and county brought separate suits against the Collector of Pike County and his bondsmen to recover amounts alleged to be due the state and county from the collector. The suits were consolidated and referred to a referee. After a hearing the referee found, because of "poor bookkeeping," that the collector was indebted to the state and county for the sums claimed. Accordingly the referee recommended that a judgment be entered for

the sums due and, in addition, he recommended that a judgment be entered against the collector and his bondsmen for the penalty of 10% a month. Upon exceptions by the collector and his bondsmen to the referee's report the circuit court approved the report as to the sums due and accordingly entered judgment against the collector and his bondsmen. The circuit court, however, disapproved that part of the report recommending the imposition of the 10% penalties and the state appealed from the judgment disallowing the penalty—the collector and his bondsmen did not appeal from the judgment as to the principal sums—and so the only question involved upon the appeal, as Judge Westhues stated, was whether, as the state claimed, the 10% penalty should have been assessed. The opinion in that case did not and could not make any determination as to the principal sums due. But, because the principal sums resulted solely from illiterate bookkeeping, because there was no fraud or willful withholding, because the county court had approved the collector's settlements, and because the statute is penal and strictly construed, it was held that sections 9933 and 9934, R.S.Mo.1929 (sections 139.250 and 139.260, R.S.Mo.1949, V.A.M.S.) had no application: ("No section of the revenue act imposes a penalty upon a collector for an honest mistake of this kind." See also 84 C.J.S. Taxation § 668, p. 1347. And so the opinion explicitly held that the penalties could not be inflicted in the circumstances of that case, the only theory of liability and recovery being "a mistake of fact and not of law," but it did not hold that a judgment could not be entered for any principal sums due "without (also) imposing the penalty," as the respondent says.

Both sections 139.250 and 139.260 provide a penalty, but as may be inferred from the Sanderson case, the penalty and the remedy for the recovery of principal sums due are separable and have been recovered separately on another occasion. State v. Gilmore, 342 Mo. 1232, 119 S.W.

2d 805. Originally the respondent did not attack the essential validity of section 139.260, or claim that it was invalid for any reason, or urge that it was not separable (82 C.J.S. Statutes, § 112, p. 187); his contention initially and now is that the motion failed to state a claim upon which relief could be granted and that the evidence proved as a matter of law that the state was not entitled to recover under this section. These arguments are based upon the fact that section 139.260 contains this language, which the respondent has italicized, "If any collector shall fail to pay into the County Treasury or to the Collector of Revenue the amount of *taxes or revenue* by him collected, due the state or county, respectively, *at the times and in the manner by this chapter required.*" It is said that the motion and the proof alleged and showed that the proceeding was to recover "commissions," not "taxes or revenue," and, therefore, the statute not mentioning "commissions," the motion failed to state a claim and the proof showed that section 139.260 was inapplicable.

This heuristic argument could become an exercise in semantics; before they were deducted and became "commissions" the sums, undoubtedly, were "taxes," and if they are sums due the state and may not be deducted by the collector as "commissions" they are, undoubtedly, "revenue by him collected, due the state * * *." Sec. 139.260, R.S.Mo.1949, V.A.M.S. By whatever name they may be called "excess fees belong to the state and county or municipal corporation as an increment to its revenue." State v. Gilmore, 342 Mo., loc. cit. 1235, 119 S.W.2d, loc. cit. 805. As the respondent points out there was neither charge nor proof of fraud, or of other tortious misconduct, in retaining the excess commissions, but before a collector or other public official may retain fees or commissions he must be able to point to the law authorizing them and if he is unable to do so and there is no such law and they are not allowable, they may be recovered by and on behalf of the public.

State ex rel. Barker v. Scott, 270 Mo. 146, 192 S.W. 90; 67 C.J.S. Officers § 83, p. 319; 42 Am.Jur., Sec. 83, p. 777. If an official retains fees or commissions which he is not entitled to receive they may be recovered in an action for money had and received (Nodaway County v. Kidder, 344 Mo. 795, 129 S.W.2d 857), they may be allowed by way of recoupment in a mandamus proceeding (State ex rel. Buder v. Hackmann, 305 Mo. 342, 265 S.W. 532), or, in the absence of a valid defense to the claim, in a summary proceeding such as this. 84 C.J.S. Taxation § 670, p. 1348; 67 C.J.S. Officers §§ 101, 123(b), pp. 364, 416.

▮ And throughout this proceeding the respondent has asserted two related defenses; one, that he made final settlements with the county court and the settlements were approved, as provided by law, and, two, that the state accepted his monthly reports and one if not both of his final settlements and thereby, it is said, the proceeding is barred and the state estopped to assert this claim. In the first place, in contrast to several of the cases relied upon by the respondent, this proceeding concerns only the state's share of excess commissions, the county is not a party to this proceeding. State v. Gilmore, supra. It is true that in the past collector's reports have been filed with the state auditor, but since the adoption of the 1945 Constitution and the consequent revision of the statutes and the reorganization of the departments of state government it has been rather carefully spelled out that "all officers" bound to pay money directly to the state, including "county and township collectors of revenue," after settling with their county courts, must exhibit "their accounts and vouchers to the state collector of revenue for the amount due the state to be adjusted and settled." Sec. 136.160 R.S.Mo.1949, V.A.M.S. Under the particular statute involved here the collector is required to "pay into the county treasury or to the director of revenue the amount of taxes or revenue by him collected, due the state or county," and it is specifically provided that the proceeding shall be "in the name of the state or county, as the case may be." Sec. 139.260, R.S.Mo.1949, V.A.M.S. Thus it is not necessary to elaborate further to illustrate that reports and settlements with county courts do not have the force they once had. Not only are collectors public officials, not mere agents of their districts, the collection of taxes is a ministerial function. 51 Am.Jur., Sec. 996, p. 871. And the parties agree that since 1945 county courts, in accepting and approving collectors' reports, do not act judicially (Rippeto v. Thompson, 358 Mo. 721, 216 S.W.2d 505); in his brief the respondent says "the county court acts in an administrative capacity and not in a judicial capacity," but, he says, the fact that they are no longer courts of record has nothing to do with the matter of approving settlements.

▮ But in all of the cases upon which the respondent relies there were two factors which the court said were determinative; one was the fact that the county courts acted judicially in approving the settlements and the other was "that the money was voluntarily paid, upon a mistake of law, and without fraud or mistake of fact; and (as) in ordinary cases, in transactions between individuals, money thus paid could not be recovered back." State ex rel. Scotland County v. Ewing, 116 Mo. 129, 138, 22 S.W. 476, 478; State ex rel. Lawrence County v. Shipman, 125 Mo. 436, 28 S.W. 842; State ex rel. Shannon County v. Hawkins, 169 Mo. 615, 70 S.W. 119; Hethcock v. Crawford County, 200 Mo. 170, 98 S.W. 582. While the action was between political subdivisions, not against the officer, this court, in speaking of all those decisions, said that they "were all cases of settlements made by the county with county officers; i. e., circuit clerks and county collectors. Formal settlements intervened, which settlements were set down upon the solemn records of a court of record. The shadowy reason behind the holdings in these cases smacked

of the doctrine of res adjudicata, and accord and satisfaction." Lamar Township v. City of Lamar, 261 Mo. 171, 190, 169 S.W. 12, 16. Settlements between public officers and other official bodies authorized to audit and pass upon accounts may be prima evidence of the matters stated (annotation 103 A.L.R. 1048), but, as we have sought to indicate and demonstrate throughout the course of this opinion, they are not conclusive and do not bar the recovery of excess commissions due the state. State v. Gilmore, supra; State ex rel. Barker v. Scott, supra; State ex rel. Buchanan County v. Fulks, supra; annotation 13 Ann.Cas. 351; 84 C.J.S. Taxation § 665, p. 1344. As against the state and its political subdivisions, or as against the public, estoppel has not been a very popular doctrine. 19 Am.Jur., Secs. 165–168, pp. 818–822.

■ For the two years involved here the respondent properly computed the rate of his commissions under section 54.320 but he was either unaware of or ignored section 52.270 and the fact of its limiting the commissions he might retain. The county court and at least for the first year the state's Director of Revenue likewise ignored or was unaware of the statute and its restrictions as to collectors' commissions. Therefore, the respondent says, "If there was a mistake at all, it was a mistake of law and not of fact." It is not necessary to analyze and determine, however, whether there was in point of fact a mistake by anyone, and if so precisely what kind of a mistake it was; it is assumed for the purposes of this opinion that it was a mistake of law. Restatement, Restitution, Sec. 7, p. 31; 40 Am.Jur., Sec. 207, p. 857. Also upon this record there is no fraud or moral turpitude on the part of anyone. It is our view, as indicated throughout, that "On grounds of public policy, the rule as to voluntary payments or payments made under a mistake of law is ordinarily held not to apply to fees or compensation paid out of public funds to public officers. * * * Accordingly, it is a general rule that fees or compensation paid illegally or by mistake, out of public funds, by ministerial officers or boards to public officers, or amounts collected by public officers which they have been permitted illegally to retain as fees or compensation, may be recovered back, * *." 40 Am.Jur., Sec. 210, p. 859. In addition to the cases cited in this opinion as so indicating, particularly Nodaway County v. Kidder, State v. Gilmore, State ex rel. Buchanan County v. Fulks, State ex rel. Barker v. Scott and State ex rel. Buder v. Hackmann, see also County of Marion v. Phillips, 45 Mo. 75; 67 C.J.S. Officers § 101, p. 364; 20 C.J.S. Counties § 128, p. 939.

The trial court found all the issues in favor of the respondent collector which, of course, including a finding that the penalties provided by either section 139.250 or 130.260 were not assessable. In the particular circumstances and in view of State ex rel. Thompson v. Sanderson, supra, it may not be said that the court erred in this respect and that phase of the judgment is affirmed. The trial court did err, however, as a matter of law in holding, for any of the reasons advanced here, that the respondent was not liable for the principal sums due, and, accordingly, the judgment is reversed and the cause remanded with directions to enter a judgment in favor of the State of Missouri for the precise amounts of the excess commissions retained.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court en Banc.

All Judges concur.