OGLESBY v. FORT SMITH DISTRICT OF SEBASTIAN COUNTY.

Opinion delivered July 5, 1915.

COUNTIES—COUNSEL FOR COUNTY—FEES—COUNTY EXPENSES.—A county judge let a contract for the construction of a county courthouse; suits were brought to restrain the building thereof, and the county judge employed special counsel to defend said suits, and in the order appointing such special counsel the county judge contracted, on behalf of the county, that they should not receive less than $1,000 each for their services; held, the claims of such attorneys based upon such order of the county judge would be dismissed.

Appeal from Sebastian Circuit Court, Fort Smith District; *John H. Vaughan,* Special Judge; affirmed.

*Ira D. Oglesby, pro se.*

While it is made the duty of the prosecuting attorney to represent the county in its litigation, it is clearly the

duty of the county judge to see that the county's interests are protected, and to this end, it is within the power of the county judge, even though the prosecuting attorney is willing and ready to serve, to employ other attorneys, if he deems it necessary, to protect the interests of the county. Kirby's Dig. § 1493; 60 Tex. 522; 13 Cal. 531; 88 N. W. 981; 28 Cyc. 642; 63 Pac. 804; 83 N. W. 388.

Appellant had the right to fix his minimum retainer in advance, and appellee, while under no obligation to employ him, yet, having done so, is bound by the contract. 4 Cyc. 987. It is no defense to say that appellee received no benefits by reason of appellant's labor. 4 Cyc. 983.

*Thos. B. Pryor* and *Vincent M. Miles,* for appellee.

1. It was the duty of the prosecuting attorney to represent the county in this litigation, and the county judge had no authority to employ appellant to represent the county, except to aid the county attorney or when he refuses to act. Kirby's Dig., § 6393; 32 Ark. 685. See, also, 8 Kan. 494; 24 Barb. 229; 40 N. J. L. 186.

As to the refusal or nonrefusal of the prosecuting attorney to act, there was a sharp conflict in the evidence, and the trial court's finding of this issue against the contention of appellant should stand.

2. The facts in this case are identical with and grew out of the facts in controversy in the case of *Jennings* v. *Fort Smith District of Sebastian County,* 115 Ark. 130, 171 S. W. 920, from the statement of facts by this court, in which case, it appears that the county judge, if he had any authority to employ counsel, had delegated this authority to his commissioner. Since the county judge was personally a defendant in that suit, it is fair to presume that he employed appellant to represent himself. At least, the county judge, having appointed a commissioner and authorized him to institute suit to quiet the title of the county in the proposed site for the courthouse, had no authority to proceed then to employ counsel indiscriminately in that litigation.

Appellant is chargeable with knowledge of the statutes and the limitations upon the power of the county

court, as well as the commissioner; and it is well settled
that a county judge can not exceed the authority given to
him under the statutes.  11 Cyc. 390; 35 Pac. 97; 24 N. E.
626; *Id.* 138; 60 Am. St. 518; 1 Dillon, Mun. Corp. 450, §
237; 86 Pac. 1012; 3 N. E. 848; 95 S. W. 1032.

3.  The order of the county court rendered on Octo-
ber 31, 1912, sustaining a motion to vacate and set aside
the order employing George W. Dodd and appellant to
represent the appellee in all matters in which said county
and district were interested, was an order of the *same*
court vacating a previous order rendered at the *same*
*term,* and must prevail over the alleged order of employ-
ment.  27 Ark. 295, and cases cited; 107 Ark. 415; 116
Ark. 65.

HART, J.  Ira D. Oglesby, an attorney of Fort Smith,
presented a claim to the county court of Sebastian County
for $1,000 for legal services alleged to be due him by the
Fort Smith District of Sebastian County.  His claim was
disallowed by the county court, and he appealed to the cir-
cuit court.  There his claim was again disallowed, and he
has appealed to this court.  The facts, briefly stated, are
as follows:

In 1911, an agitation was begun for the erection of a
new courthouse for the Fort Smith District of Sebastian
County.  The inhabitants of the district were sharply
divided on the question and mass meetings were held and
numerous articles written, pro and con, in the newspapers
about it.  Those favoring the proposition thought that the
old courthouse was unsafe and unsanitary, and that it
should be torn down and a new one erected on its site.
Those opposed believed that the old courthouse was ade-
quate for its purposes, and that it was practicable to re-
pair it at a reasonable cost so that it would last many
years.  The erection of a new courthouse on the site of the
present one became the principal issue between the candi-
dates for the democratic nomination for county judge at
the primaries to be held in March, 1912.  Judge Harp, the
then county judge, favored the erection of a new court-
house, and Ezra Hester, his opponent, opposed it.  Judge
Harp was defeated in the primary and Judge Hester was

elected county judge at the general election in September, 1912. Judge Harp determined upon the plan of letting a contract for the erection of a new courthouse before his term of office expired. In August, 1912, he let a contract for the construction of a new courthouse. The officers of the city of Fort Smith had quarters in the courthouse, and several suits were instituted against the county judge, having for their object the prevention of the building of a new courthouse. One of the suits for that purpose was brought in the chancery court by the city of Fort Smith against the county judge. Other suits having the same object in view were instituted by various citizens of the Fort Smith District of Sebastian County.

On the 16th day of October, 1912, Judge Harp, who was still in office, made an order which was entered of record, reciting the pendency of these various suits and the necessity of employing counsel to represent the Fort Smith district in them because the prosecuting attorney had declined to do so or to take any action to protect the interests of the said district in the litigation. The order appointed George W. Dodd and Ira D. Oglesby as attorneys for said district to represent it in all the matters referred to, and provided that said attorneys should receive not less than $1,000 each for their services.

About the middle of July, Colonel Oglesby became ill and went to a hospital in the city of St. Louis and remained there until about the middle of September. During the time he was there he received papers occasionally from Fort Smith.

It was shown on the part of Colonel Oglesby that the county judge, prior to his employment, had attempted to get the prosecuting attorney to represent the interests of the Fort Smith district and that the prosecuting attorney had refused to do so. The county judge himself talked with the prosecuting attorney about it, and Mr. Dodd says that he also talked with him, and that the prosecuting attorney declined to represent the county on account of the political phase of the case. Mr. Dodd admitted that during all this time there was continuous discussion of the matter on the street, and that numerous articles written

with reference to it were published, in the Fort Smith newspapers.

The prosecuting attorney himself testified that the suits with reference to the matter had been brought before he knew anything about them, and that the cases were within a few days of trial before he was consulted by the county judge in regard to the matter, and that the county judge had already employed counsel prior to this time, and that for that reason he declined to represent the Fort Smith District of the county.

On the 20th day of October, 1912, the suit of the city of Fort Smith against the Fort Smith District of Sebastian County was decided by the chancellor, and it was decreed that the county judge be enjoined from erecting a new courthouse. Judge Harp, the then county judge, directed Colonel Oglesby to immediately prepare a transcript and take an appeal to the Supreme Court, and this was done.

Judge Harp's term expired and Judge Hester became county judge on the 31st day of October, 1912, and he immediately set aside the order providing for a minimum fee of $1,000 each for Colonel Oglesby and Mr. Dodd. Colonel Oglesby attempted to prosecute the appeal of the case from the chancery court, where Judge Harp had been enjoined from erecting a new courthouse, but Judge Hester moved the Supreme Court to dismiss the appeal, and this was done. Other testimony will be referred to later on.

Certain declarations of law were asked by Colonel Oglesby, which were refused by the circuit court, and a general finding was made in favor of the Fort Smith District. Judgment was rendered accordingly.

A majority of the judges have voted to affirm the judgment in this case, but a majority of us have not agreed upon the reasons therefor.

It is the contention of Colonel Oglesby that the county court on the 16th day of October, 1912, made a legal and binding contract with him to perform legal services in which the Fort Smith District of Sebastian

County was interested, and that the incoming county judge had no right to set aside such contract.

He also contends that the object of the litigation above referred to was to settle the title of the Fort Smith District to the site on which the present courthouse in the city of Fort Smith is situated.

On the other hand, it is the contention of counsel representing the Fort Smith District of Sebastian County that Colonel Oglesby was employed to represent the interests of the county judge in erecting the courthouse, and that the title to the ground on which the present courthouse stands was not involved in any of the litigation; that Colonel Oglesby was the personal representative of the county judge; and that the county is not liable to him.

It is well settled in this State that the finding of a circuit judge sitting without a jury is as binding upon us upon appeal as the verdict of a jury. Such findings will not be disturbed on appeal if there is any substantial evidence to support them. In the application of this rule, Judge Smith and the writer have reached the conclusion that when all the facts and surrounding circumstances and the inferences which might legitimately be drawn therefrom, are considered, the circuit court was warranted in finding that Colonel Oglesby had no cause of action against the county, and that the circuit court did not err in dismissing his complaint.

Section 6392 of Kirby's Digest provides that each prosecuting attorney shall commence and prosecute actions both civil and criminal in which the State or any county in his circuit may be concerned. Section 6393 of the Digest provides that he shall defend all suits brought against the State or any county in his circuit. In the construction of the latter section, in the case of *Graham* v. *Parham,* 32 Ark. 676, the court held that it is the official duty of the prosecuting attorney to defend suits brought in the Federal Court against the county embraced in his circuit.

We think the county court has power to employ additional counsel when in his judgment the interests of the county are of sufficient importance to demand it, or, in

cases where the prosecuting attorney neglects or refuses to perform the duties imposed upon him by statute, or, where his other duties are of such character that he does not have time to properly represent the county. We are of the opinion, however, that the power of the court to employ additional counsel does not give the right, under the guise of such employment, to take the case out of the hands of the prosecuting attorney and confide its management to other attorneys without consultation with the prosecuting attorney, or for the purpose of furthering the private interests of the county judge.

It is true that evidence was adduced by the plaintiff tending to show that the prosecuting attorney had been consulted by the county judge in regard to contemplated litigation with reference to the building of the courthouse, and that he had failed and neglected to represent the county. On the other hand, the prosecuting attorney himself testified that the first information he had of the pending litigation was derived from reading the newspapers and that the county judge had already employed other counsel without consulting him. According to his testimony, the county judge superseded him with other counsel and he was justified in considering himself as having no official connection with the cases. He stated that the county judge did not talk to him until a few days before the case above referred to, which was decided in the chancery court on the 21st day of October, 1912, was heard and determined. He admits that Colonel Oglesby talked to him about the case, but says this was only a few days before the case was reached for trial.

It will be remembered that Colonel Oglesby was not employed until the 16th day of October, 1912, and that the only case in which he appeared was heard by the chancellor on the 21st day of October, 1912. It also appears that Colonel Oglesby had been in a hospital in St. Louis until the latter part of September, 1912. So, it is reasonable to presume that Colonel Oglesby did not talk with the prosecuting attorney until a few days before the case was called for trial. At any rate, the circuit court was the sole judge of the credibility of the witnesses and was

justified in finding that the county judge employed additional counsel without any appearance of incompetency or neglect of duty on the part of the prosecuting attorney.

As we have already seen, the undisputed facts show that an agitation for the erection of the new courthouse was begun in 1911, and the citizens of the district were sharply divided on the question of the expediency of erecting it. The question was an issue in the primary campaign in the spring of 1912. Judge Harp, the then county judge, asked for re-election, and one of the reasons given therefor was that he favored the erection of a new courthouse. His opponent was Ezra Hester, who was opposed to the construction of a new courthouse. That the erection of a new courthouse was one of the principal issues of the primary campaign is fairly inferable from all the circumstances. Hester was at the time county clerk. The agitation for the erection of a new courthouse was begun the year before. Colonel Oglesby testified that the people were very much divided on the question. George W. Dodd, who was also employed as an attorney in the matter by Judge Harp testified that there was friction between Judge Harp and Ezra Hester in regard to the erection of a new courthouse, and that Hester had challenged the power of the county judge in certain instances. That it was generally known that Ezra Hester was opposed to the erection of a new courthouse.

Judge Harp was defeated in the primary by Judge Hester, and the latter was elected as county judge at the general election in the following September. Judge Harp then determined to get the construction of the new courthouse under such headway before his term of office expired that it would not be practical to prevent the courthouse from being erected. In carrying out his plan, he made an order for the erection of a new courthouse on the site occupied by the old one. Certain citizens of Fort Smith instituted suits against him for the purpose of preventing the erection of a new courthouse.

To accomplish the same purpose, the city of Fort Smith, which, under a contract with the county, occupied

rooms in the present courthouse, also instituted an action in the chancery court against the county judge.

To defend these suits, Colonel Oglesby was employed on the 16th of October, 1912, and appeared as counsel for the county judge when the cause, set for October 21, 1912, was heard and determined.

The chancellor rendered an exhaustive opinion in the cause and memorialized the facts by spreading them on the record. He expressed the view that the present courthouse was safe and large enough for the needs of the district for years to come.

He further held that there was no cloud upon the title of the district to the grounds upon which the courthouse is situated, and that the city only claimed the right to occupy a part of the building under a contract it had made with the Fort Smith District of Sebastian County.

As soon as the case was decided by the chancellor the county judge ordered Colonel Oglesby to take an appeal at once. This Colonel Oglesby proceeded to do. He caused the transcript to be prepared and the appeal to be lodged in the Supreme Court at once.

When Judge Hester became county judge on the 31st day of October, 1912, he at once made an order setting aside the former order made at the same term of the court employing Colonel Oglesby. He also moved the Supreme Court to dismiss the appeal in the case above referred to, and this was done.

Colonel Oglesby never consulted him about the matter at all, but throughout the litigation acted under the direction of Judge Harp, who had made the order employing him during his term of office. Colonel Oglesby was a prominent lawyer and citizen of Fort Smith, and must have known of the controversy that had been waged for a year or more regarding the erection of a new courthouse. Under all these circumstances, we think the circuit court was justified in finding that Colonel Oglesby was acting in the interest of Judge Harp, and was not entitled to a claim for his services against Sebastian County.

For these reasons we have voted to affirm the judgment of the circuit court disallowing his claim.

Judge Kirby is of the opinion that under section 6393 of Kirby's Digest, and the record of this cause, it was beyond the power of the county judge to employ counsel to perform the duties which had been imposed by statute upon the prosecuting attorney, and that its contract with Colonel Oglesby was *ultra vires* and void. For that reason he has voted to affirm the judgment. It follows that the judgment is affirmed, and it is so ordered.

The Chief Justice and Mr. Justice Wood are of the opinion that the judgment should be reversed.

McCulloch, C. J., (dissenting). Two of the justices who have voted to affirm this case, declare the law to be that the county court has the power to employ counsel, in addition to the prosecuting attorney, to conduct litigation in which the county is interested. I agree unqualifiedly with that conclusion, and so does Mr. Justice Wood. That makes four of the judges who are of the opinion that the county court possesses that power. The authorities cited in appellant's brief sustain that view. Those authorities relate generally to municipal corporations, but the principle is the same that where a county or municipality has authority to direct litigation in which it is interested it may employ special counsel, and the fact that an official attorney has been provided by law does not curtail that power. Our statute (Kirby's Digest, section 1493) expressly provides that the county court shall defend cases appealed to the circuit or Supreme Court, and that all expenses incurred by reason of such defense shall be paid by the county. It is therefore necessarily implied that county courts shall provide the means for conducting litigation in which it is interested, and that includes the employment of attorneys.

Two of the judges say that while the county court has the power to employ counsel, it can not exercise that power and enter into a contract of employment with another attorney without first obtaining the consent of the prosecuting attorney, or, at least, until after he has been consulted. If there is any authority at all for employing additional counsel to represent the county in its litigation, it is to be exercised by the county court. Certainly, there

is no authority conferred by statute on the prosecuting attorney to exercise that power or to hinder its exercise by the county court. If the county court possesses the power at all, it may exercise it in disregard of the wishes of the prosecuting attorney and without consulting him. Any other view of the matter necessarily places the power in the prosecuting attorney, and not the county court. The very fact, however, that the county court contracts for the services of an attorney presupposes that the court has determined the necessity and propriety therefor; and even if the prosecuting attorney may object to the contract, it is too late to do so after it has been entered into. The prosecuting attorney might, like any other citizen, appeal from the order of the county court entering into such a contract, but he can not defeat the contract or abrogate it merely by manifesting his disapproval.

Again, it is said by the two judges whose views I am now discussing that the evidence is sufficient to warrant the conclusion that appellant was acting for the county judge personally and not for the county court. Where is that evidence found? The contract is evidenced by an order of the county court which was duly entered of record and pursuant to that contract appellant performed the services contemplated in the employment. There is no evidence whatever that Judge Harp personally employed appellant to do anything at all, and there is no suggestion anywhere in the record of any fraud or collusion between the two. Judge Harp was very earnestly in favor of building a new courthouse. Whether he was right or wrong about that, as a matter of policy or propriety, it is plain that what he did was openly done and was done as a public official representing the county, and not as an individual. As an individual he made no contract with appellant, but acting for the county he made a contract in the most solemn form. I can not see that the issues of a political campaign, which resulted in Judge Harp's defeat for re-election as a county judge, have anything whatever to do with this case. It might be different if there was any charge here of fraud and collusion between Judge Harp and appellant to defraud the county

by making a contract for the latter to perform services for the county judge as an individual and impose the payment upon the county. But such is not the state of this case. The most that can be said of it is that Judge Harp made a mistake as a matter of policy in pushing the movement to build a new courthouse.

It is treating too lightly the solemn contract of the parties to set aside the appellant's contract with the county on any such grounds as that which has been mentioned as sustaining the decision of the circuit court. I am of the opinion, therefore, that the undisputed evidence in this case shows that appellant's contract with the county court was valid, and that he performed the services and is entitled to the compensation specified in the contract. Mr. Justice Wood agrees with me in this conclusion.