THE STATE ex rel. COUNTY OF BUCHANAN v. RICHARD D. FULKS and FIDELITY & DEPOSIT COMPANY OF MARYLAND, Appellants.

In Banc, December 30, 1922.

1. **COUNTY COLLECTOR: Compensation: Commissions on Delinquent Taxes: Mistake of Law.** The County Collector, having retained nine thousand dollars in commissions and fees on taxes collected by him in the years 1911, 1912 and 1913, could not receive or recover from the county in 1915 a commission of four per cent on delinquent taxes collected during those years, even if the statute allowed him said commission of four per cent in addition to the nine thousand dollars. Having collected the delinquent taxes during those years and paid into the county treasury the extra commission of four per cent under a mistaken view of the law that he was not entitled to retain them, he cannot in subsequent years recover them back upon the ground that his construction of the statutes was a mistake and erroneous.

2. ———: ———: ———: **Not Retainable: Proviso to Section 12927: Exception.** Under Subdivision XV of Section 12927, Revised Statutes 1919, the County Collector is not entitled to retain over nine thousand dollars in commissions and fees in any one year, and having received nine thousand dollars he is not entitled to receive in addition thereto a commission of four per cent of delinquent taxes collected by him. Section 12929 is a general statute, to which the proviso of Subdivision XV of Section 12927 is

an exception; but the two sections are not repugnant, and the exception prevails over the general statute in a situation to which it is applicable. The proviso requires all commissions and fees in excess of nine thousand dollars coming into the hands of the County Collector of Buchanan County from whatever source in any one year to be paid into the proper treasuries.

3. ———: ———: ———: **State's Share: Quietus.** An opinion of the Attorney-General presented by the State Auditor to the County Collector to the effect that he was entitled to retain, in addition to his compensation of nine thousand dollars, the four per cent commission on delinquent taxes collected in previous years, amounted to a quietus for the State's share of such commissions.

4. ———: ———: ———: **Limitations.** The Statute of Limitations begins to run in favor of a county collector who has unlawfully retained a commission of four per cent of delinquent taxes collected in former years, at the end of the fiscal year in which he has retained the commissions, to-wit, on March 1st, when he is required to make an annual settlement; and where in January and February, 1915, with full knowledge of the county court, he retained or appropriated, out of the revenues collected in January and December, four per cent of the delinquent taxes collected in the years 1911, 1912 and 1913, a suit on his bond to recover the amount of such commissions so retained was not barred for three years after March 1st, 1915, and if begun on February 28, 1918, the three-year Statute of Limitations was not available as a defense to such suit.

5. ———: ———: ———: **School Taxes: Recovery by County: Remittitur.** Under the statute (Sec. 12927, R. S. 1919), providing that "all fees and commissions coming into the hands of the County Collector from any sources whatever in excess of nine thousand dollars . . . shall be paid into the city, county and state treasuries, in proportion to the amount received on taxes collected for each," the county is not entitled to recover the four per cent of delinquent taxes collected for the school district and retained by the County Collector. He is not entitled to retain said commissions, they belong to the school district as an increment, and should be paid over to its treasury, but the county is not entitled to recover them. But where the whole commission of four per cent of the delinquent taxes collected during three years had been paid by the County Collector into the county treasury, and he in a subsequent year retained out of the revenues collected in that year the entire amount of those commissions, and it cannot be determined from the record the proportion thereof that belongs

to the school district, a *remittitur* from the judgment for the whole amount in favor of the county cannot be ordered, but the cause must be remanded to the trial court to ascertain and order the amount of the *remittitur*, and enter judgment *nunc pro tunc* for the balance.

6. ———: Refusal of Prosecuting Attorney to Sue: Employment of Other Attorneys. Upon the Failure or refusal of the Prosecuting Attorney to obey the order of the county court directing him to bring suit upon the bond of the County Collector for taxes collected and unlawfully retained by him as commissions, the county court has power to employ private counsel to bring the suit, and a suit brought by them in the name of the State may be maintained.

7. ———: ———: ———: Endorsement by Attorney-General: Relation: Limitations. And the signing by the Attorney-General and the newly elected Prosecuting Attonrey, by leave of court, of an amended petition filed by the private attorneys employed by the county court, relates back to the filing of the original petition within three years from the time the cause of action accrued, and is sufficient of itself to save the case from the bar of the Statute of Limitations.

Appeal from Buchanan Circuit Court.—*Hon. L. A. Vories,* Judge.

REVERSED AND REMANDED (*with directions*).

*James W. McKnight, Mytton & Parkinson* and *Wm. E. Stringfellow* for appellants.

(1) The fees allowed the collector under the provisions of Sec. 11511, R. S. 1909, Sec. 12959, R. S. 1919, are in addition to those allowed the collector by the provisions of the Sub-Section 15 of Section 11481, R. S. 1909, Sec. 12927, R. S. 1919. State ex rel. v. Hawkins, 169 Mo. 615; Dameron v. Hamilton, 264 Mo. 103; Douglas v. Ray, 199 S. W. 568; Hitchcock v. Crawford County, 200 Mo. 170. Sub-section 1 of Sec. 11481, R. S. 1909, says that "the collector shall receive as full compensation for his services in collecting the revenue, except back taxes, the following commissions and no more." (2) The

St. Joseph School District is a separate legal entity, and it was the duty of the County Collector to pay funds collected by him for such district directly to the treasurer of said district, and not to Buchanan County. R. S. 1919, sec. 11413. And the St. Joseph School District and not Buchanan County is the proper party to sue therefor. (3) The defendants sought to introduce evidence explanatory of the records and statements filed by Fulks and spread upon the records by the county court and made to the County Treasurer, which evidence was excluded and qualified. State ex rel. West v. Diemer, 255 Mo. 351; State to the use of Carroll County v. Roberts, 62 Mo. 388. (4) Sec. 1890, R. S. 1909 (Sec. 1318, R. S. 1919), is applicable and required this action to be brought within three years. City of St. Joseph v. Wyatt, 274 Mo. 566; State ex rel. v. Harter, 188 Mo. 516; State ex rel. v. Yates, 231. Mo. 276. The defendants having pleaded the three-year Statute of Limitations, and having introduced evidence in support of the same, it devolved upon the plaintiff to bring itself within some exception in order to avoid the statute. Shelby County v. Bragg, 135 Mo. 300; City of St. Joseph v. Wyatt, 274 Mo. 566. It cannot be said that the county court, or the judges thereof, or the county officers, were ignorant of facts which were open to their examination, and which it was their duty to know. Shelby County v. Bragg, 135 Mo. 299. See Secs. 9551, 9509, 9606, 9916, 11478, 11470, R. S. 1909. The action accrued when the collector failed to perform the duty imposed upon him by law and by his official bond, and with actual or constructive knowledge of such failure on the part of the county court. State ex rel. v. Harter, 188 Mo. 516; Loomis v. Mo. Pac. Ry. Co., 65 Mo. 469; Shelby Co. v. Bragg, 135 Mo. 291; City of St. Joseph v. Wyatt, 274 Mo. 566. When the facts raising the question of limitation are not alleged in the complaint the question whether plaintiff's claim is barred by limitation cannot be a question exclusively for the court. Wright v. Cain, 93 N. C. 296;

State ex rel. v. Hawkins, 103 Mo. App. 251. Where an instruction given at the instance of a party to the suit is decisive thereof and excludes from the consideration of the jury the questions raised by the evidence of the opposing party it is erroneous. Clark v. Hammerle, 27 Mo. 55; Carder v. Primm, 60 Mo. App. 423; Bank v. Murdock, 67 Mo. 619; Wingfield v. Wabash Ry. Co., 257 Mo. 361; Powell v. Union Pac. Ry. Co., 255 Mo. 420; Crews v. Lackland, 67 Mo. 619. (5) By Secs. 1007-8, R. S. 1909, the prosecuting attorney is authorized to institute and defend all criminal or civil suits by or on behalf of the county, and all civil and criminal actions by or on behalf of the State arising within his jurisdiction. This power thus conferred is exclusive and cannot be superseded or ignored by the county court. State ex rel. Lashley v. Wurdemann, 183 Mo. App. 28; State v. Lamb, 237 Mo. 451; County of St. Louis v. Clay, 4 Mo. 559. When the prosecuting attorney acts *ex-officio* he exercises a discretion which the State delegated to him, and to him alone, and the State and the county acting through him had power to dismiss the case without leave of the court. State ex rel. v. Lamb, 237 Mo. 437; State ex rel. Lashley v. Wurdemann, 183 Mo. App. 28. By Section 1010, R. S. 1909, it is provided that no court of record shall allow any such cases as are alluded to in Sections 1007-8, to be tried unless the prosecuting attorney shall be present or some one properly qualified to prosecute for him. Cases cited above. County courts are not general agents of the county or State, and have only such authority as is expressly granted them by statute. Butler v. Sullivan County, 108 Mo. 630; Dixon v. Livingston Co., 70 Mo. 239; Morrow v. Pike Co., 189 Mo. 610; State ex rel. Baylis v. Clinton Co., 185 S. W. 1149. By act approved March 11, 1873, Laws 1873, p. 18, the county courts were given the right to employ special counsel to aid or assist the prosecuting attorney, but this act was left out of the Revision of 1879, and was repealed by Sec. 3160, R. S. 1879. Morrow v. Pike Co.,

State ex rel. Buchanan County v. Fulks.

189 Mo. 610.   The Attorney General has no super-advising right in the direction and control of suits on behalf of the county, or on behalf of the State, on actions arising within the jurisdiction of the county.   Ex parte Howell, 200 S. W. 71; State ex rel. v. Lamb, 237 Mo. 437.   Even if the county court had power to employ special counsel in extra cases (which it has not under the law of Missouri), it would be an abuse of that discretion to permit such employment without first consulting with the prosecuting attorney.   Buchanan v. Farmer, 184 S. W. (Ark.) 33.   The prosecuting attorney having the right to appear and control this action on behalf of the county, and having entered his appearance and dismissed said action, the trial judge was without jurisdiction or authority to continue the same.   R. S. 1909, secs. 1979, 1980; Conn. Fire Ins. Co. v. Manning, 177 Fed. 893; Luse v. Luse, 144 Iowa, 393; Hamlin v. Walker, 228 Mo. 611; Mason v. Belt Railroad Co., 226 Mo. 212.   The cause of action must be complete and properly brought in the first instance and cannot, by an amended petition, be made so, over the objection of the defendant.   Davis v. Clark, 40 Mo. App. 515; Rice v. McClure, 74 Mo. App. 379.

*Strop & Mayer* and *Eugene Silverman* for respondent.

(1)   The Collector of Revenue of Buchanan County was permitted to retain commissions and fees from all sources to an amount not exceeding $9000 per annum. R. S. 1919, sec. 12927; R. S. 1909, sec. 11481.   (2)   Respondent did not recover any moneys belonging to the St. Joseph School District.   Respondent did recover for fees collected by appellant on account of delinquent taxes on real estate.   All fees and commissions in excess of $9000 belong to the State, county or city as the case may be.   No recovery was had for any sum due the State.   The city was entitled to no part of the fund sued for.   The

County of Buchanan and not the St. Joseph School District was entitled to the fees in question. R. S. 1919, sec. 12927; R. S. 1909, sec. 11481. (3) Neither in brief nor printed argument have appellants pointed out what testimony was excluded which should have been received. In fact all testimony offered by appellants was admitted. The court did and necessarily was obligated to determine the effect of the testimony when the peremptory instruction was given. (4) Respondent admits that the three-year statute governs this case and does not rely upon any exception to prevent the running of the statute. There is no evidence that appellant Fulks did prior to March 1, 1915, retain any of the fees sued for excepting the sum of $3063.36. As to the balance of the recovery, which was for fees retained March 1, 1915, the three-year statute could have no application. And as to the above sum representing fees for back tax collections, appellant Fulks was not required to make settlement or pay over the same until March 1, 1915, and, therefore, as to that sum also the statute did not begin to run until that date. R. S. 1919, sec. 12927; R. S. 1909, sec. 11481. (5) By Sec. 3781, R. S. 1909, it was the duty of the county court "to enforce the collection of money due the county; to order suit to be brought on the bond of any delinquent," and therefore the court had the implied authority to employ counsel, if necessary, to institute the suit. Wiley v. City of Seattle, 7 Wash. 756, 38 Am. St. 905; Vicksburg Waterworks Co. v. Vicksburg, 33 L. R. A. (N. S.) 815; Oglesby v. Fort Smith District, 119 Ark. 572; Spence v. Clay County, 122 Ark. 161. (a) It is being the duty of the county court to enforce collection of money due the county, the prosecuting attorney, by failure to perform his duty, could not prevent the county court from performing its duty. (b) The suit having been brought on the last day it could be brought to be within the three years, the court properly permitted the newly elected and qualified prosecuting attorney to sign the petition and thus become a party

to the action, and this related back to the filing of the petition.  Cytron v. Transit Co., 205 Mo. 692; State ex rel. v. Thompson, 81 Mo. App. 549; Lottman v. Barnett, 62 Mo. 159.  (c)   The Attorney-General, under the facts in this case, had the right to join in the suit, as he did join in it, and this related back to the filing of the petition.  People v. Tweed, 133 Abb. Pr. N. S. (N. Y.) 25. (d)   In many states, under the facts in this case, any individual taxpayer, having waited until the last day upon which the suit could be filed, and the county court and prosecuting attorney having failed to file the suit in the performance of the duty imposed upon them by statute, could have brought this suit for himself and others similarly situated, and for the benefit of the county.  7 R. C. L. p. 965, sec. 39; Adolph Zuelly v. Casper, 160 Ind. 455, 63 L. R. A. 133.

HIGBEE, J.—This is an action on the official bond of the Collector of Buchanan County to recover $10,622.76 of the taxes and funds belonging to said county, collected and retained by the defendant Fulks during the fiscal year ending February 28, 1915.  Fulks retained out of the revenue collected for the year 1914, $6032.96, which he claimed was due him for the four per cent commissions on back taxes for the years 1911, 1912, and 1913, and $4001.30 for the commissions on delinquent taxes for 1914.  This does not include $588.50 commissions on delinquent taxes due the State for the first three years.

The jury returned a directed verdict for plaintiff for $11,967.06, including interest, on June 17, 1919, and judgment was entered accordingly, from which defendants appealed.

The evidence for the defendants, as summarized in the divisional opinion, is as follows:

"The evidence of defendants showed that the defendant Fulks during the first three years of his term (1911-12-13) did not retain the four per cent on back

taxes collected by him, authorized by the Back Tax Act, but turned such commissions over to the County Treasurer; that in December, 1914, the State Auditor, John P. Gordon, through his official accountants, made an audit of the accounts for the years 1911-12-13 of the County Collector and of other officers of said county, and reported to the county court, about January 19, 1915, that there was due Fulks as Collector for these years from the State, $588.50, and from the funds within the county, $6032.96, stating in said report 'this payment was caused by the Collector not being properly advised as to the commission he was allowed to retain.' Following is the Attorney-General's opinion as relates to this case: 'County collectors in office prior to the taking effect of the Laws of 1911, page 390, in counties like Buchanan, were entitled to receive fees to a sum not in excess of $9000, and in addition thereto were entitled to receive fees from the collection of the collateral inheritance tax and also a commission of four per cent for collecting delinquent taxes under Section 11511, Revised Stautues 1909 (Sec. 12959, R. S. 1919).' Defendant Fulks testified that in December, 1914, the accountants of the State Auditor, John P. Gordon, commenced to audit his accounts as Collector, and he learned from them that he was entitled to four per cent on delinquent real estate taxes, in addition to his $9000 salary. He got this information in December, 1914. The Auditor's report is dated January 9, 1915, and was delivered to the county court about that time. That about a week afterwards he told the county court that he was entitled to this four per cent and was going to take it. The court was in session. Judges Hill, Bub and Kirkman were on the bench. He saw the county court again before February 28, 1915. He told the county court he was going to take this money. 'Judge Hill himself says: "Well, the Attorney-General has gave it to you, the State Auditor has gave it to you, the prosecuting attorney has, what else is there for us to do?" I said, All right. I

drawed a check for $6000 the next day. I showed him the check and he laughed about it. Court was in session. I am sure Kirkman and Hill were present on the bench, not so positive about Judge Bub.' Cross-examination: 'I retained $6000, February 15, 1915. During the whole year 1914 I retained $19,622.76. I believed I was entitled to these fees for delinquent taxes from the report of these auditors and from what they said to me, in addition to my $9000 after John P. Gordon showed me an opinion from the Attorney-General. For that reason I retained the sum sued for in payment of those fees in addition to my $9000 salary."

I. It is admitted that the proviso of Paragraph XV of Section 12927, Revised Statutes 1919, that no collector shall be allowed to retain over $9000 of commissions and fees in any one year except as provided in subdivision fourteen, is applicable to Buchanan County, but it is contended that this does not include his commissions on delinquent and back taxes; that Section 12959, Revised Statutes 1919, allows the collector an additional four per cent commission for collecting delinquent and back taxes.

Section 12927 provides that "the collector shall receive as full compensation for his services in collecting the revenue, *except back taxes,* the following commissions and no more." Then follow fifteen subdivisions fixing the rates of commissions according to the amount of revenue collected in the several counties. There is, however, this express limitation in Subsection XV of this section:

"*Provided,* that no collector shall be allowed to retain over nine thousand dollars of commissions and fees in any one year except as provided in subdivision fourteen herein; and all fees and commissions coming into the hands of any collector from any source whatever in excess of nine thousand dollars, except as provided in subdivision fourteen, shall be paid into the city, county

and state treasuries in proportion to the amount received on taxes collected for each, and it shall be the duty of each collector, once in each year, to file in the county court in each county and in the office of the comptroller of each city not in county, a statement, under oath, of the amount of fees and commissions received by him and from what source, and shall immediately pay over the excess according to the order of the county court or comptroller: *Provided, however,* that this section shall not apply to any county adopting township organization; *Provided,* that the compensation of the county collector for the collection of the levee taxes and ditch taxes, collected for drainage purposes, shall be one per cent of the amount collected.''

It will be seen that the only instance in which the collector may retain more than $9000 for his fees and commissions is the one per cent allowed for the collection of the levee taxes and ditch taxes.

II. Fulks understood that $9000 was the maximum of commissions and fees he was entitled to retain in any one year. Acting on that construction he had paid to the county treasurer $4001.80, the four per cent **Mistake of Law.** commissions on the delinquent and back taxes for the three years, 1911-12-13. This was a voluntary payment and if he misconstrued the statute it was a mistake of law and not of fact, and he is not entitled to recover the payment from the county. The tax levy of each year is made to meet the expenditures of that particular year. Under our scheme of taxation each year's levy is made to meet ''the conditions of the county treasury and current demands of the county's business and plaintiff may not disturb the county treasury of Crawford County unless he is warranted in so doing by the strict law.'' [Hethcock v. Crawford County, 200 Mo. 170, 177; Dameron v. Hamilton, 264 Mo. 103, 121.] The commissions having been voluntarily paid in for the three years mentioned and the money presumably

having been paid out for the purposes for which it was levied and collected, it is clear that the Collector had no right to retain it out of the levy for the year 1914, which was made to meet the conditions of the treasury and the current demands of the county's business for that year. As was said in the Hethcock Case, at page 176:

"In view of the foregoing we think there can be but one fair conclusion drawn, that until this court in the Hawkins Case lit a candle of interpretation for plaintiff, he did not see such commissions and did not know he was entitled to them by law. Otherwise, plaintiff's acts are incomprehensible."

So, in the instant case, Fulks did not understand he was entitled to an extra commission for collecting delinquent and back taxes until he was so advised by the Attorney-General and State Auditor.

III.  We think the conclusion reached in the Hethcock Case and in State ex rel. v. Hawkins, 169 Mo. 615, that, under the facts of those cases, the Collector was entitled to retain the four per cent commissions on the delinquent and back tax collections, is not applicable to the facts of this case. We are of the opinion that Mr. Fulks correctly construed Subdivision XV of Section 12927, Revised Statutes 1919, and that while opinions of the state officials are entitled to great respect, yet it is clear they did not claim to speak *ex cathedra* in their interpretation of the statutes. The cases referred to supra were controlled by other subdivisions of this section.  The facts in this case, however, bring it clearly within the proviso of the section quoted supra.  This entire section and Section 12959 must be read together.  "So far as reasonably possible the several statutes, although seemingly in conflict with each other, should be harmonized and force and effect given to each, as it will not be presumed that the Legislature, in the enactment of a subsequent statute, intended to repeal an earlier one, unless it has done so in express

*[margin note: Maximum Amount.]*

terms, nor will it be presumed that the Legislature intended to leave on the statute books two contradictory enactments." [36 Cyc. 1149.] Again, on page 1151:

"Where there is one statute dealing with a subject in general and comprehensive terms and another dealing with a part of the same subject in a more minute and definite way, the two should be read together and harmonized, if possible, with a view to giving effect to a consistent legislative policy; but to the extent of any necessary repugnancy between them, the special will prevail over the general statute. Where the special statute is later, it will be regarded as an exception to, or qualification of, the prior general one; and where the general act is later, the special will be construed as remaining an exception to its terms, unless it is repealed in express words or by necessary implication." [See Lazonby v. Smithey, 151 Mo. App. 285, 289 and cases cited in State ex rel. Lashley v. Becker, 290 Mo. 1. c. 620.]

Hence it is obvious that under the facts in the Hawkins, Hethcock and Dameron cases, Section 12959, which is a statute couched in general terms, was applicable and controlling. But it is admitted that this case is within the proviso of Subdivision XV of Section 12927. It must be obvious that "to the extent of any necessary repugnancy between them, the special will prevail over the general statute." The canons of construction require that the two statutes relating to the same subject should be harmonized and read together as constituting one law; the special being viewed as an exception to the general statute; otherwise, the proviso of Subsection XV is meaningless. Our conclusion is that Fulks was not entitled to retain the four per cent commissions on delinquent and back taxes provided by Section 12959, Revised Statutes 1919, but was required to account for all commissions, in his annual settlements, in excess of $9000.

IV. It appears from the testimony of Mr. Fulks, that, acting on the advice of the State Auditor and At-

torney-General, he concluded he was entitled to and would retain this additional four per cent commission and that he so told the county court and, on the following day,

*Limitations.* February 16, 1915, drew a check for $6000 on the funds in his possession, and showed it to the court; that during the year 1914 he retained $19,622.76 for the commissions claimed by him as heretofore stated; that after John P. Gordon showed him an opinion from the Attorney-General, he believed he was entitled to these fees for delinquent taxes aggregating $10,622.76, in addition to his $9000. This was done in February, 1915. It stands admitted that the county court, prior to February 28, 1915, knew he had retained this sum. On this state of facts it is earnestly insisted that the action is barred by the three years' Statute of Limitations. The court overruled a demurrer to the evidence and di-

*Quietus.* rected the jury "to find a verdict for the plaintiff against both defendants for 161/180 of $10,622.76, that is, $9501.46, with interest at the rate of six per cent per annum from the first day of March, 1915, to date." The State Auditor had given Fulks a *quietus* for the State's share of the commission. This sum was eliminated by the court's instruction.

V. We need not notice in detail the numerous assignments of error. We quote from appellant's reply brief:

"The facts are, as a cursory examination of the record will show, that not only the fees and commissions which respondent admits Fulks was rightfully entitled to retain were retained by him prior to February 15,

*Limitations.* 1915, but all of the money sued for was retained by him prior to February 15, 1915. The monthly reports made by Fulks during 1914 are not in evidence, so we are dependent upon the oral testimony. Fulks was questioned by respondent as to the dates on which he retained the total of $19,622.76, which respondent claimed he had retained during the year ending

March 1, 1915. He testified, 'I didn't retain it all at one time; . . . I didn't take it any one time. I took it each month.'

"The annual settlement does not show what he retained in fees for the year. (See testimony of County Auditor Campbell, p. 81). 'He reports from month to month to the County Treasurer and to my office and also to the County Clerk what fees he retains during that month.' (Campbell, p. 83). The $4001.30 was held out of December collections, 1914. (Campbell, p. 85). Fulks reported February 15, 1915, that he had retained the $6621.46 from his January collections. (Campbell, pp. 85-86)."

It is argued from this that the Statute of Limitations (Section 1318, R. S. 1919) began to run each month for any excess of fees and commissions retained and that the three years' limitation had expired before the date of the filing of the petition, which was February 28, 1918.

Collectors, sheriffs, marshals, clerks, constables and other persons chargeable with moneys belonging to any county, shall render their accounts to and settle with the county court at each stated term thereof, pay into the county treasury any balance which may be due the county, take duplicate receipts therefor and deposit one of the same with the clerk of the county court within five days thereafter. [Sec. 9551, R. S. 1919. See also Secs. 9509, 9606, 9916, 12916 and 12924, R. S. 1919.]

It is uniformly held that an action on the bond of a defaulting treasurer of a city or school district, county clerk, or like official instrusted with public funds, is barred by the Statute of Limitations, if not begun within three years after the cause of action accrued. [Shelby County v. Bragg, 135 Mo. 291, 36 S. W. 600; State ex rel. v. Harter, 188 Mo. 516, 87 S. W. 941; City of St. Joseph v. Wyatt, 274 Mo. 566, 203 S. W. 819.] This is conceded by the respondent. But when did the cause of action accrue? The controversy is over the retention of excessive commissions and fees. The $4001.30

was held out of December, 1914, collections. This was retained in January. On February 16, Fulks checked out $6000 on account of commissions and fees which he claimed were due him for the years 1911, 1912 and 1913, and showed his check to the county court. Hence we are not concerned about his quarterly settlements, if any were made. But his annual settlement, filed March 1, 1915, does not show what fees and commissions he retained out of the collections for the year 1914. This settlement was filed, but no action was taken on it by the county court as shown by the record entries. There is here, however, no controversy over secret peculations, nor a failure on the part of the county court to use reasonable diligence to discover them so as to prevent the running of the Statute of Limitations, as in Shelby County v. Bragg, and City of St. Joseph v. Wyatt, supra, as it is clear the county court knew that Fulks claimed credit for the four per cent commissions on the delinquent taxes for the four years of his term. In view of the reports the county collector is required to make, it is insisted that the Statute of Limitations began to run from the time the county court had notice of the retention of the fees and commissions claimed by the collector. The monthly reports made by Fulks during the year 1914 were not in evidence, nor does his annual settlement filed on the first Monday of March, 1915, show the fees and commissions he retained for the year. See excerpt from appellant's reply brief, supra. As we have seen, they were retained in January and February of that year. But if it were conceded that he had regularly accounted in his quarterly statements and annual settlements for all moneys collected and fees retained, such statements and settlements would not be *res adjudicata*. In State ex rel. West v. Diemer, 255 Mo. l. c. 351, 164 S. W. 517, we said:

"County courts in the allowance of claims, as in settling with officers, acted as a mere public board of audit, as ministerial, administrative or fiscal agents for the

county and not strictly as a court; hence we have uniformly refused to apply the doctrine of *res adjudicata* to their orders allowing or disallowing claims against the county, or to their settlements with county officers. That doctrine has always been adhered to and must be accepted as settled.''

In Hethcock v. Crawford County, 200 Mo. 1. c. 175, LAMM, J., said: ''The county court does not prepare his settlements, nor does it furnish the data therefor. The county court does not allow his commissions; it has no lot or part in that; the law allows them on settlements and statements made by him—the court being merely the representative or fiscal agent of the county, charged with the duty to see to it that the public is protected.''

In view of these consistent rulings, it is obvious that if the county court is not concluded by formal settlements allowing the collector definite, stated, sums for his fees and commissions, much less can it be said that Fulk's mere claim for the excessive fees as shown by the evidence would preclude a recovery in this case. The court had no lot or part in the matter. The contention is that the retention of the fees and commissions claimed started the running of the Statute of Limitations.

There is, however, a special statute which we think disposes of this question adversely to appellant's contention. Section 12910, Revised Statutes 1919, requires the county collector to return the delinquent list to the county court at the term of the court to be held on the first Monday of March, and settle his accounts of all moneys received by him on account of taxes and other sources of revenue, at which time he receives credit for the delinquent list. This is known as his annual settlement. By Subsection XV, Section 12927: ''It shall be the duty of each collector, once in each year, to file in the county court in each county and in the office of the comptroller of each city not in county, a statement, under oath, of the amount of fees and commissions received

by him and from what source, and (he) shall immediately pay over the excess according to the order of the county court or comptroller."

This statement could not have been filed before the end of the fiscal year, February 28. As has been said, the annual settlement filed by Fulks at the March term, 1915, of the county court, did not include a statement of the amount of the fees and commissions received by him and from what source, nor did he file the statement of fees and commissions received by him as required by Subsection XV. The county court had no authority to enter into an accounting with the collector before the close of the fiscal year, for his fees and commissions; it had "no lot or part in that." Fulks testified he did not retain this $19,622.76 at any one time. "I took it each month." What he meant by this or when he took it is not apparent. It is clear, however, that he was not required to make this accounting until he made his annual settlement at the end of the fiscal year, and that he did not do so at that or any other time. It was then, at the end of the fiscal year, that he was required to make this detailed statement under oath and immediately pay over the excess of fees and commissions received by him. At that time and not until then could the excess of commissions and fees received by the collector be ascertained and become due and payable. Failing to pay it over when the statute made it due and payable, he was then, and not until then, in default and the cause of action then accrued. As Mr. Fulks pleads the Statute of Limitations in his defense, the burden is on him to bring himself within its terms. This he has not done. The suit was brought within three years after the time he should have made the statement under oath of the fees and commissions received by him, and within three years after the time the statute commanded him to pay it over. The action was not barred by the Statute of Limitations.

VI. Appellants, in their brief, complain of error in directing a verdict for plaintiff for penalties collected by Fulks for services and commissions in collecting back and delinquent taxes for the St. Joseph School District. The St. Joseph School District is a separate entity, and it was the duty of the collector to pay funds collected by him for such district directly to the treasurer thereof and not to Buchanan County (citing Sec. 11413, R. S. 1919), and that St. Joseph School District and not Buchanan County is the proper party to sue therefor.

School Taxes.

The penalties and four per cent commissions imposed by Section 12959, Revised Statutes 1919, are paid by the delinquent taxpayers in addition to the taxes levied. Except as provided by Section 12927, Subdivision XV, these commissions are retained by the collector for his extra services. Under Subdivision XV "all fees and commissions coming into the hands of the collector from any source whatever in excess of nine thousand dollars . . . shall be paid into the city, county and state treasuries, in proportion to the amount received on taxes collected *for each*." Hence it is apparent that the county was not entitled to recover the four per cent commissions received by the collector on delinquent taxes, collected for the school district. There is apparently an omission in the statute in not requiring these commissions to be paid to the school district. The collector is not entitled to retain them, his commissions and fees being limited to $9000 for any one year. It clearly belongs to the school district as an increment, and should have been paid over to the treasurer thereof.

VII. But the whole of this four per cent commission for the first three years of the collector's term had been voluntarily paid over to the county treasurer, and he could not rightfully retain it out of the revenue collected for the year 1914. The record does not dis-

*Remittitur.* close, nor are we able to determine, the amount of the four per cent commissions on delinquent taxes due the school district for the year 1914, in the collector's hands at the time this suit was brought, and for this reason we are unable to order a *remittitur*. That sum, with interest thereon from February 28, 1918, to June 27, 1919, the date of the verdict, should be found by the court and judgment *nunc pro tunc* rendered for the reduced amount as of the date of the verdict.

VIII.   Another contention is that the court erred in overruling appellant's motion to dismiss this action because it was not brought by the Prosecuting Attorney of Buchanan County, but by private counsel employed by the county court of that county.   The prosecuting attorney was repeatedly directed by the coun-

*Suit by Private Counsel.* ty court to bring the suit, but being of the opinion that the collector was entitled to retain the four per cent commissions imposed on delinquent taxpayers by the statute in addition to the $9000 compensation provided by Subdivision XV supra, he persistently refused to bring the suit.   In this exigency the county court advised with private counsel, and on the last day before the expiration of the three-year period of limitation the court, by an order entered of record, employed Messrs. Strop and Mayer, attorneys, to bring this action, and the petition was filed on February 28, 1915, pursuant to such employment.   It was not signed by the prosecuting attorney.

It is the duty of prosecuting attorneys to commence and prosecute all civil and criminal actions in their respective counties, in which the county or State may be concerned.   [Secs. 736 and 738, R. S. 1919.]   The county court is the fiscal agent of the county and is charged with the duty and vested with the power to enforce the collection of money due the county, to order suit to be brought on bond of any delinquent and require the pros-

ecuting attorney for the county to commence and prosecute the same. [Sec. 9560, R. S. 1919.] We are of the opinion that when the prosecuting attorney refused to perform his duty, as in this instance, the county court was not shorn of its power to act in the discharge of its duties in the premises, nor required to supinely abdicate its functions. The servant is not greater than his master. The county court was empowered by the statute to order the suit to be brought and to require the prosecuting attorney for the county to commence and prosecute the action. The refusal of the prosecuting attorney to obey the order of the county court created an emergency. The suit must be brought or the county lose a large amount of its revenue. In this emergency we have no doubt the county court had the implied power to employ other counsel to bring the suit; otherwise it would have failed in the discharge of a duty imposed upon it by the statute. *Qui facit per alium, facit per se.*

In Wiley v. Seattle, 7 Wash. 576, mandamus proceedings were brought against the mayor of the city to require him to sign an illegal issue of bonds. Neither the legal officers nor the legislative body of the city would assist him or procure counsel for the purpose: *Held,* that the city was liable for the services of special counsel employed by the mayor, although the employment of such counsel was contrary to the provisions of the charter. ANDERS and HOYT, JJ., dissenting.

In Spence & Dudley v. Clay County, 122 Ark. 157, 161, the court said: "Section 6393 of Kirby's Digest provides that the prosecuting attorney shall defend all suits brought against the State or any county in his circuit. Notwithstanding this section of the statute, we held in the case of Oglesby v. Fort Smith District of Sebastian County, 119 Ark. 567, 179 S. W. 178, that the county court, under our Constitution and laws, was empowered to employ other counsel when in its judgment the interests of the county were of sufficient importance to demand it, or in cases where the prosecuting attorney

State ex rel. Buchanan County v. Fulks.

neglects or refuses to perform the duties imposed upon him by the statute or.where his other duties are of such a character that he does not have time to properly represent the county.''

See Vicksburg Waterworks Co. v. Vicksburg, 54 So. 852, 33 L. R. A. (N. S.) 844; 15 C. J. 548.

In 7 Ruling Case Law 965, it is said: ''If a county has a plain cause of action for an injury done to it, which should be enforced for the protection of its citizens or taxpayers, and its governing board refuses to assert such cause of action, in some jurisdictions any citizen, by reason of his indirect interest, may sue, in behalf of himself and others similarly situated, the person against whom the cause of action exists, and thereby enforce the rights of the county. And likewise where an unjust and illegal burden is being imposed on the taxpayers by a county, or the money or property of the county, to replace which taxation must be levied, is being wasted or squandered, a taxpayer has such a direct interest that a bill to enjoin the threatened burden will lie.'' See Newmeyer v. M. & M. Ry. Co., 52 Mo. 81; Carson v. Sullivan, 284 Mo. 353, 361; Harris v. Langford, 277 Mo. 527, 533.

Before the trial of this cause, Attorney-General McAlister and the newly elected prosecuting attorney of Buchanan County, by leave of court, signed the amended petition. We think these signatures related **Relation:** back to the filing of the petition and were of **Limitations.** themselves sufficient to save the case from the bar of the statute. [Cytron v. St. Louis Transit Co., 205 Mo. 692, 700.]

There is some complaint about the exclusion of evidence. In the view we take of the case, this complaint is without merit.

The judgment is reversed and the cause remanded to be proceeded with in accordance with this opinion. *Woodson, C. J., Walker* and *James T. Blair, JJ.,* concur; *Elder, Graves* and *David E. Blair, JJ.,* dissent.